UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALMA BURRELL, VICKYE HAYTER, MARGARET HEADD,<br><br>                        Plaintiffs,<br>        v.<br><br>COUNTY OF SANTA CLARA, DAN PEDDYCORD, RAE WEDEL, MARTY FENSTERSHEIB AND DOES 1 THROUGH 50, INCLUSIVE,<br>                        Defendants. | Case No.: 11-CV-04569-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiffs Alma Burrell ("Burrell"), Vickye Hayter ("Hayter"), and Margaret Headd ("Headd") (collectively, "Plaintiffs"), bring suit against their employer, County of Santa Clara ("the County"), and three County employees, Dan Peddycord, Rae Wedel, and Marty Fenstersheib, alleging: (1) retaliation in violation of California's Fair Employment and Housing Act ("FEHA"), California Government Code § 12940(h);[1] (2) failure to protect from discrimination under FEHA,

---

[1]  Although the caption of Plaintiffs' Amended Complaint indicates that the first cause of action for retaliation alleges violation of both "Title VII and FEHA," the body of the Amended Complaint contains only a reference to "Retaliation Under FEHA," citing to California Government Code § 12940(h).  ECF No. 6, ¶¶ 79-83.  At the April 4, 2013 summary judgment hearing, Plaintiffs' counsel confirmed that Plaintiffs were not pursuing any Title VII causes of action.

California Government Code § 12940(k); (3) discrimination based on disparate treatment in violation of California Government Code § 12940(a) (claims 3, 4, and 5); (4) discrimination based on disparate impact in violation of California Government Code § 12900 *et seq.* (claims 6, 7, and 8); and (5) retaliation for exercising free speech rights, as well as negligent hiring, training, and supervision, in violation of 42 U.S.C. § 1983 (claims 9 and 10).[2]

Presently before the Court are Defendants' Motion for Summary Judgment and Defendants' Motion to Sever Plaintiff Headd.[3]  The Court held a hearing on these motions on April 4, 2013 ("April 4 hearing").  Having considered the parties' submissions, the parties' oral arguments, and the relevant law, the Court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.  The Court DENIES Defendants' Motion to Sever as moot.

## I.    PROCEDURAL HISTORY

Plaintiffs filed their first Complaint on September 14, 2011, ECF No. 1, which they then amended on December 15, 2011, ECF No. 6 ("Amended Complaint" or "AC").  On February 3, 2012, Defendants answered the Amended Complaint.  ECF No. 13 ("Answer").

On January 24, 2013, Defendants filed the instant Motion for Summary Judgment, ECF No. 32 ("Mot."), and a Motion to Sever Plaintiff Headd, ECF No. 31 ("Mot. to Sever").  On January 30, 2013, Plaintiffs filed an *Ex Parte* Motion to Extend Time from February 7, 2013, to February

---

[2]  Plaintiffs' Amended Complaint lists the tenth cause of action as "Retaliation for Exercising Free Speech - 42 U.S.C. § 1983," but the body of this section references Retaliation under FEHA, specifically California Government Code § 12940(h).  *See* AC ¶¶ 116-17.  Because Section 12940(h) is addressed under the first cause of action, the Court construes the tenth cause of action for retaliation as stating a claim under 42 U.S.C. § 1983.
[3]  Defendants also filed a Motion to Exclude Amy Oppenheimer's Expert Reports and Testimony ("Mot. to Exclude"), ECF No. 48.  At the pre-trial conference on May 2, 2013, the Court DENIED Defendants' motion with respect to Oppenheimer's "preliminary report."  Mot. to Exclude, Ex. F.  Oppenheimer's preliminary report was timely served on Defendants on December 28, 2013, the last day of the extended period to disclose opening reports.  *See* Mot. to Exclude at 3-4.  However, the Court GRANTED Defendants' motion with respect to Oppenheimer's "amended report."  The Court found the amended report untimely because it was served on Defendants on January 28, 2013, one month after the deadline for opening reports, and four days after Defendants' Motion for Summary Judgment was filed on January 23, 2013.  *See* Mot. to Exclude at 4-5; Decl. of Charles Bonner, ECF No. 52, Ex. 6.  The Court further ruled that Oppenheimer's testimony at trial would be limited to the contents of the preliminary report.  *See* ECF No. 132 (Tr. of May 2, 2013 Pre-Trial Conference), at 79:2-90:27.

2

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

14, 2013, to file oppositions to the Motion for Summary Judgment and Motion to Sever.  ECF No. 42.  The Court denied Plaintiffs' *Ex Parte* Motion to Extend Time.  ECF No. 46.[4]  On February 7, 2013, Plaintiffs filed an Opposition to Defendants' Motion for Summary Judgment.  ECF No. 50 ("Opp'n").  On February 11, 2013, Plaintiffs filed an "Amended Opposition," without an accompanying motion or any form of explanation.  *See* ECF No. 57.  On February 14, 2013, Defendants filed their Reply, in which they also moved to strike Plaintiffs' Amended Opposition as untimely.  ECF No. 59 ("Reply"), at n.1.  Due to the Court's prior denial of an extension of time, and the lack of any explanation accompanying Plaintiffs' Amended Opposition, the Court GRANTS Defendants' Motion to Strike Plaintiffs' Amended Opposition.

After the April 4 hearing on these motions, on April 16, 2013, Plaintiffs submitted a declaration and attached document that Plaintiffs stated was erroneously excluded from the exhibits accompanying their Opposition to Defendants' Motion for Summary Judgment.  ECF No. 75.

The Court issued an Order stating its rulings on Defendants' Motion for Summary Judgment and Motion to Sever on April 30, 2013, ECF No. 98.  The Court stated its reasons for its rulings as to Plaintiff Burrell at the pre-trial conference on May 2, 2013, ECF No. 132.

## II.        EVIDENTIARY OBJECTIONS

Both parties filed objections to the evidence submitted in relation to the Motion for Summary Judgment.  However, Plaintiffs' evidentiary objections fail to comply with Civil Local Rule 7-3(a), as Plaintiffs did not include the evidentiary objections within their 30-page Opposition.  Instead, Plaintiffs raised their evidentiary objections in a separate two-page document.  *But see* Civil L. R. 7-3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum.").  Accordingly, the Court OVERRULES Plaintiffs' evidentiary objections for failure to comply with Civil Local Rule 7-3(a).

---

[4] The Court denied Plaintiffs' *ex parte* request because, among other reasons, Plaintiffs provided no justification for needing the extension of time other than the volume of work involved, and the Court's schedule could not accommodate an extension of time as it would interfere with preparation for the upcoming trial.

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    Defendants properly submitted evidentiary objections in their Reply. *See* ECF No. 59.

2    Defendants object to significant portions of the declarations of Plaintiffs Alma Burrell, Vickye

3    Hayter, and Margaret Headd, as well as four other accompanying declarations submitted as

4    exhibits supporting Plaintiffs' Opposition.  To the extent that the Court relies on this disputed

5    evidence, the Court addresses the evidentiary objections below.  The Court does not rely on the

6    remaining evidence and thus need not reach the remaining objections.  However, the Court

7    SUSTAINS Defendants' objections under Fed. R. Evid. 402 and 602 to the repeated statements in

8    Plaintiffs' declarations that make legal conclusions regarding which issues are "triable." *See, e.g.*,

9    Decl. of Alma Burrell ("Burrell Decl."), ECF No. 53, ¶ 11 ("There is a triable issue of fact as to

10   whether I was discriminated against on the basis of race and gender[.]"); Decl. of Vickye Hayter

11   ("Hayter Decl."), ECF No. 54, ¶ 9 ("There is a triable issue of fact as to whether my race was a

12   motivating factor in the County's decision to pay me for only seventy (70) day [*sic*] . . ."); Decl. of

13   Margaret Headd ("Headd Decl."), ECF No. 55, ¶ 19 ("There is a triable issue of fact as to whether

14   the County's business reason for denying me a promotion, reinstatement to my former position, or

15   hiring me into a new position is false.").

### III.    FACTUAL BACKGROUND

17   Plaintiffs Alma Burrell, Vickye Hayter, and Margaret Headd are three female, African

18   American employees in the Santa Clara County Public Health Department ("PHD").  Each Plaintiff

19   alleges employment discrimination by the County, though based on different factual circumstances.

### A.    Alma Burrell

21   Alma Burrell, who holds a Bachelors of Science degree in Health Science and a Masters

22   degree in Public Health, started working for the County approximately fifteen years ago. *See*

23   Burrell Decl. ¶ 4; *see also* Decl. of Melissa Kiniyalocts ("MK Decl."), ECF No. 33, Ex. A, Dep. of

24   Alma Burrell ("Burrell Dep."), at 16:20-22.  Burrell's current position is Health Care Program

25   Manager II ("HCPM II").  Burrell Decl. ¶ 2.  Prior to working as HCPM II, Burrell worked as a

26   Health Education Specialist at the Black Infant Health Program ("BIH"), and then as a Program

27   Manager I. *See* Burrell Dep. 21:1-8.

28

4

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1.    2002 Reassignment

In 2002, Burrell's job title changed from Program Manager I to HCPM II following a study that resulted in the reclassification of many employees.  Burrell Dep. at 27:6-19; Decl. of Joanne Cox ("Cox Decl."), ECF No. 36, ¶ 5.  At that time, the County reclassified other, non-African American employees as Senior Health Care Program Managers ("SrHCPM"), a higher level than HCPM II.  *See* Burrell Decl. ¶ 4; Burrell Dep. 30:23-31:11.

Burrell asked her manager, Dolores Alvarado, about the criteria that were used to determine the reclassifications.  *See* Burrell Dep. at 30:6-31:11; 34:11-17.  Alvarado explained that the classification "was based on complexity of your job, span of control, and . . . the number of staff or type of staff."  Burrell Dep. at 30:16-20.  Burrell did not think that the reclassification was fair, however, because there were other employees promoted to SrHCPM positions who "had less span of control and managed fewer or no employees" than Burrell.  Burrell Decl. ¶ 4; Burrell Dep. 30:23-31:11.

At some point thereafter, Burrell asked Alvarado about the prospects for getting promoted to a SrHCPM position.  Burrell Dep. 57:15-16.  According to Burrell, Alvarado responded by telling Burrell that she "needed to be patient" and that "other people [we]re involved in making those decisions as well."  *Id.* at 57:18-20.  Specifically, PHD Administrative Services Manager, Rae Wedel, allegedly said that Burrell "had not paid [her] dues" and that she was "moving up too fast."  *Id.* at 58:1-9.  Burrell asked Alvarado if the reason that she was not getting promoted to SrHCPM was because of her race.  Alvarado responded by saying, "on [Alvarado's] part, no."  *Id.* at 59:9-10.  Burrell then asked, "What about Rae? . . . D[oes] Rae have a problem with my race?"  *Id.* at 59:10-11.  Alvarado allegedly responded by saying, "I hope not.   I hope that is not . . . it."  *Id.* at 59:12-13.

Burrell complained about the results of the reclassification study to her union, but her union representative said that he was not going to file a grievance because of a promise he made to the Board of Supervisors.  *Id.* at 36:22-39:23.  Burrell's union representative did, however, organize a meeting with Burrell and her supervisors to discuss the subject.  *Id.* at 36:22-39:23.  According to

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1    Burrell, the meeting ended without resolution.  *Id.* at 39:23.  Burrell subsequently formed the

2    opinion that her reclassification was due to her race.  *Id.* at 34:11-35:10. [5]

3               **2.     2008 Appointment**

4          Around 2006, Burrell contends that she and Alvarado discussed Burrell's interest in a

5    SrHCPM position that included responsibility over the HIV/AIDS Program.  Alvarado allegedly

6    started preparing Burrell for this position, which included sending Burrell to two conferences about

7    HIV/AIDS and having Burrell tell her staff about the upcoming transfer.  *See* Burrell Dep. at 74:3-

8    77:1.  However, on January 28, 2008, PHD employee "J.M.," a European-American, was

9    administratively transferred into the position when his SrHCPM position was deleted due to budget

10   cuts.  *Id.* at 71:9-20; 72:9-19; Cox Decl. ¶ 6.  According to Defendants, J.M. was entitled to the

11   administrative transfer under the County's labor agreement with the union and its Merit System

12   Rules.  Cox Decl. ¶ 6.

13              **3.     2008 Application for Reclassification**

14         In July of 2008, at Alvarado's suggestion, Burrell submitted a "Classification Review" [6]

15   request to Alvarado, asking that Burrell's position of HCPM II be reviewed to determine if the

16   appropriate classification for her responsibilities was a SrHCPM.  Cox. Decl. ¶ 7.  Alvarado

17   reviewed and signed the form and forwarded it to the County's Employee Services Agency

18   ("ESA") for processing.  *See* Burrell Dep. at 93:6-7; MK Decl., Ex. E, Dep. of Dolores Alvarado

19   ("Alvarado Dep.") at 116:12-17; Cox. Decl. ¶ 7.  After Burrell's request was denied, she and her

20   union representative met with Senior Human Resources Analyst, Christine Goodson, to discuss the

21   denial on October 16, 2008.  Burrell Dep. at 94:21-95:6; 97:14-98:11; Decl. of Christine Goodson

22   ("Goodson Decl."), ECF No. 38, ¶¶ 3-4.  Following the meeting, Burrell asked Goodson to provide

23   a written explanation of the reclassification denial.  Goodson Decl. ¶ 5.  On November 3, 2008,

---

[5]  Burrell has also expressed her belief that the "only distinction between me and the others who
were classified to the SrHCPM position is that I am African-American."  Burrell Decl. ¶ 4; Burrell
Dep. 31:4-32:05. Defendants have moved to strike this statement due to lack of personal
knowledge.  Reply at 1.  The Court OVERRULES this objection.
[6]  A Classification Review is a process by which employees who are represented by Burrell's
union, the County Employees Management Association (CEMA), may ensure that their positions
are properly classified.  *See* Mot. at 3.

6

**United States District Court**
For the Northern District of California

1    Goodson provided Burrell a written response in which Goodson stated that Burrell was properly

2    classified based on her breadth of responsibility, independent judgment, program knowledge,

3    supervision exercised, and supervision received.  *Id.* ¶ 6.

4           Burrell believes that the denial of her reclassification was based on her race.  *See* Burrell

5    Dep. at 103:2-11.  She alleges that Goodson did not conduct any investigation into the position

6    before denying Burrell's request, and that Goodson's stated reasons for the denial were erroneous.

7    Specifically, Burrell states that Goodson based her Classification Report on the false assertions that

8    Burrell did not supervise other managers, and that a SrHCPM would necessarily serve on an

9    Executive team.  *See* Opp'n at 4 (citing MK Decl., Ex. D, Dep. of Rae Wedel ("Wedel Dep.") at

10   146:1-147:25); Burrell Decl. ¶¶ 25, 31.

11                  **4.      Burrell's Support of Hayter's Application for Reallocation**

12          In 2007 and 2008, Burrell supported Hayter, one of the women Burrell supervised in BIH,

13   in applying for "reallocation"[7] from a Public Health Nurse ("PHN") II to a PHN III.  Burrell Dep.

14   at 211:10-15; MK Decl., Ex. B, Dep. of Vickye Hayter ("Hayter Dep.") at 115:22-25.  Burrell

15   alleges that Alvarado warned Burrell that she would be looked upon unfavorably if she continued

16   to support Hayter's request for reclassification.  Burrell Dep. at 219:14-220:3.

17          According to Burrell, Alvarado then removed Burrell's responsibility over the Maternal

18   Child and Adolescent Health ("MCAH") program, as well as another program, in retaliation for

19   Burrell's support of Hayter's application for reclassification.  Burrell is inconsistent as to whether

20   the removal of responsibility occurred in 2008 or 2009.  *Compare* Burrell Dep. at 126:7-8; 128:15-

21   130:3 (citing 2009 as the year that Alvarado removed these programs), *with* Burrell Decl. at ¶38

22   (declaring that Alvarado removed these programs on July 16, 2008, while Burrell's own

23

---

24   [7]  The County explains that reallocation is a procedure guaranteed by the collective bargaining
     agreement of Hayter's union, Service Employees International Union ("SEIU"), by which
25   employees can request to have their positions studied to see if they qualify for a higher-level
     classification and seek review of any such decision.  *See* Mot. at 6 n.5 (discussing the procedural
26   and substantive requirements of reallocation, and noting factors that support classification
     including a change in training and experience required to perform the work, an increase in the
27   complexity of decision making required for the position, and a change in management
     responsibility).

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

**United States District Court**
For the Northern District of California

1    application for reclassification was pending).  Burrell also alleges that the removal of these

2    programs interfered with her request to be reclassified as a SrHCPM.  Burrell Decl. ¶ 38.

3              **5.**        **2010 Denial of Promotion**

4            In October of 2009, "C.M.," another PHD employee also classified as a HCPM II, began

5    working "out of class" in a SrHCPM position held by "D.F.," who was out of the office on medical

6    leave.  *See* Cox Decl. ¶ 8.

7            In February of 2010, Burrell met with her new manager, Charis Subil, to discuss a plan

8    created by Burrell to get promoted to SrHCPM.  Burrell Dep. at 137:9-20.  Subil allegedly thought

9    Burrell's proposal was "a good idea," and that she would take it to the new PHD Director, Dan

10   Peddycord.  Burrell Dep. 138:6-9.  Subil allegedly told Burrell that she thought Burrell should be

11   promoted.  Burrell Dep. 147:2-3.  In March of 2010, Burrell met with Peddycord to discuss

12   Burrell's promotion into a SrHCPM "code."  Burrell Decl. ¶ 45.  Burrell alleges that Peddycord

13   was initially enthusiastic about Burrell's proposal during the March 2010 meeting, and said that he

14   would support any decision made by Subil.  *Id.*; Burrell Dep. at 146:11-17.

15           On April 5, 2010, as part of the PHD Fiscal Year 2011 Budget, the County permanently

16   transferred C.M. into D.F.'s SrHCPM position, and deleted C.M.'s former HCPM II position.  *See*

17   Cox Decl. ¶ 6.

18           In September of 2010, Burrell met with Peddycord and Subil to discuss Burrell's request to

19   be made a SrHCPM.  Burrell Dep. at 147:17-149:12.  Burrell contends that Peddycord told her she

20   would not be promoted because Burrell had not participated in H1N1 activities.  *Id.* at 148:15-19.

21   Burrell says that she told Peddycord that she was on medical leave for three or four weeks and,

22   when she returned, Alvarado prohibited her from participating in different H1N1 outreach groups.

23   *Id.* at 149:6-12; 152:5-18.  Burrell further alleges that she expressed interest at that meeting in a

24   SrHCPM code that was previously held by PHD employee, D.F.  *Id.* at 158:15-21.  Burrell

25   contends that Peddycord said he would get back to her in two weeks, but never did.  *Id.* at 160:23-

26   161:19.

27

28

                                                 8

**United States District Court**
For the Northern District of California

In October of 2010, Burrell learned that C.M. had been promoted from HCPM II to the

SrHCPM position previously held by D.F.  Burrell Dep. at 166:2-167:13; Cox. Decl. ¶ 8.  The

County alleges that there was no requirement that the County post the SrHCPM position, accept

applications for the position, or interview candidates.  Cox. Decl. ¶ 8.

### 6.    2010 Department of Fair Employment and Housing Complaint

Burrell filed a complaint alleging discrimination based on race with the Department of Fair

Employment and Housing ("DFEH") on October 26, 2010, based on the September 2010 denial of

her request for a promotion.  MK Decl. Ex. G.  On May 27, 2011, the DFEH issued Burrell a right-

to-sue notice.  *Id.*

### B.    Vickye Hayter

Vickie Hayter is an African American woman who holds a Bachelors of Nursing degree

and a Masters of Science degree in Health Science.  Hayter Decl. at ¶ 2, p .1,[8] ¶ 17.  She began

working for the County in 2001, and transferred to the PHD in 2004, where she worked in the BIH

program.  Hayter Dep. at 18:6-19:1, 22:23-23:15.  Hayter was classified as a PHN II beginning in

March of 2005.  Cox Decl. ¶ 9.

### 1.    December 2005 Application for Reallocation

In December of 2005, Hayter applied for reallocation of her position from PHN II to PHN

III.  Cox Decl. ¶ 10.  On February 21, 2006, Hayter's application was denied, purportedly because

she failed to meet the PHN III position's general requirement of working as a PHN for at least

three years.  Hayter Dep. at 42:14-43:9; Cox Decl. ¶ 12.  Hayter was on maternity leave at that

point, and she alleges that she was told that she could not have the decision reviewed because the

dates for review could not be adjusted.  Hayter Dep. at 51:3-53:16.  Defendants note that Hayter

did not request an allocation review hearing.  Cox Decl. ¶ 12.

---

[8] Hayter's Declaration contains numbered paragraphs 1 through 9 on pages 1 through 4, followed
by numbered paragraphs 1 through 25 on pages 5 through 14.

9

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

### 2.   January 2007 Application for Reclassification

In January of 2007, Hayter applied for reclassification from PHN II to PHN III.  Hayter Dep. at 55:14-19; 57:12-17; Cox Decl. ¶ 13.[9]  On April 6, 2007, the application was denied on the ground that she was performing duties consistent with a PHN II.  Hayter Dep. at 59:12-61:25; Cox Decl. ¶ 15.  Hayter did not appeal this decision.  Cox Decl. ¶ 15.

### 3.   December 2007 Application for Reallocation

In December of 2007, Hayter applied again for reallocation from PHN II to PHN III. Hayter Dep. at 65:5-11; Cox Decl. ¶ 16.  Human Resources Analyst Kathy Buchanan recommended that Hayter's application for reallocation be granted, Cox Decl. ¶ 16, but PHD administration believed that Hayter was performing PHN II level duties and should not be reclassified.  Wedel Dep. at 413:17-23; 414:22-415:3; Alvarado Dep. at 315:18-23; 324: 11-22. Human Resources Director Joanne Cox states that she determined that Hayter may have been performing some duties that were not PHN II duties, including researching and preparing grants for her department, and therefore was performing her job in a manner inconsistent with County Policy. Cox Decl. ¶ 17.  On April 9, 2008, these duties were removed.  *Id.*  Cox alleges that she did not know Hayter's race at the time that Cox recommended the removal of Hayter's extra duties.  *Id.*

On April 10, 2008, Hayter was notified that her position would not be reallocated, but that she would be paid for 70 days of working out of class, the number of work days from when Hayter first submitted her Position Classification Questionnaire to her supervisor to the date of the County's response.  Cox Decl. ¶ 18.

### 4.   Hayter's Grievance of the Third Denial of Reclassification

On May 6, 2008, Hayter filed a grievance with the County Labor Relations department, alleging that the County denied her the right to arbitrate her request for reallocation.  Hayter Dep. 81:12-13; Decl. of Pablo Pineda ("Pineda Decl."), ECF No. 35, ¶ 3-4.  The County's Labor Relations Department responded that she was not entitled to arbitration.  Pineda Decl. ¶ 5.

---

[9] The County defines reclassification as a process by which SEIU employees can request that their positions be studied to determine whether they are performing duties appropriate for their classification, and have any such decision reviewed by an appeals officer.  The County notes that "[r]eclassification is not intended . . to reward high performance." Mot. at 7 n.6.

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On April 21, 2008, Hayter met with Kacy Snodgrass, SEIU Local 715 Contracts Enforcement Specialist, and Alvarado.  Hayter Decl. ¶ 12.  At this meeting, Alvarado purportedly accused Hayter of smirking, and subsequently told Burrell that Hayter had been rude and unprofessional.  *Id.*

In April of 2010, Hayter and her union representative met with Wedel, Burrell, Pineda, and a labor relations representative to discuss Hayter's grievance regarding the denial of her reallocation, the amount of her compensation for working out of class, and the appropriate scope of her work at BIH.  Hayter Dep. at 102:3-15; Burrell Dep. at 218:13-19.  Hayter states that Wedel made a comment to the effect of: "the African-American population is only about 2.9 percent in Santa Clara County, and that's pretty insignificant, and I was only serving a small percentage of those." Hayter Dep. 46:7-46:25.[10]  *See also* Burrell Dep. 267: 1-23.  Burrell also alleges that, after this meeting, Wedel made a comment about "these people."  Burrell Dep. at 241:4-241:5.

Hayter was on maternity leave with her third child followed by a medical leave from September of 2010 until January of 2012.  Hayter Dep. at 41:16-18.

### 5.    Hayter's Two Applications to be A Public Health Nurse Manager (PHNM)

Hayter applied twice to work as a Public Health Nurse Manager ("PHNM positions"). Hayter Dep. at 30:3-13; Decl. of Sherae Moresco ("Moresco Decl."), ECF No. 37, ¶ 12; Decl. of Laura Brunetto ("Brunetto Decl."), ECF No. 40, ¶ 4.  Defendants allege that Hayter was denied the first position because she lacked supervisory experience, and the second because another person, "G.A.," was selected who scored higher than Hayter on various selection criteria.  Moresco Decl. ¶ 12; Brunetto Decl. ¶ 4.

### 6.    Hayter's Promotion to PHN III

In June of 2011, the County notified Hayter that her PHN II code in the BIH program was deleted as the State changed the focus of the program to a more psychosocial model, and that she would be reassigned to a PHN II in Regional Services.  Hayter Dep. at 147:15-19; Cox Decl. ¶ 19.

---

[10] In another recounting, Hayter states that Wedel said the African American population was only 2.9% "and could not be considered a community."  Hayter Decl. ¶ 15.

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  Hayter does not claim that this reassignment was discriminatory in nature.  Hayter Dep. at 147:23-

2  149:11.  Hayter began working at Regional Services when she returned from her maternity and

3  medical leave in January of 2012.  *Id.* at 41:16-18.

4      On April 30, 2012, Hayter was promoted to PHN III after applying and interviewing for a

5  vacant position.  Hayter Dep. at 146:20-147:6; Moresco Decl. ¶ 13; Cox Decl. ¶ 20.

### 7.      2010 DFEH Complaint

7      On November 18, 2010, Hayter filed a complaint with the DFEH alleging discrimination

8  based on race due to an alleged denial of a promotion on April 29, 2010.  MK Decl., Ex. H.  On

9  July 14, 2011, the DFEH issued a right-to-sue notice.  *Id.*  On August 23, 2011, Hayter filed a

10  complaint with the DFEH alleging denial of promotion, retaliation, and denial of a pregnancy

11  accommodation, on the basis of sex, race/color, and retaliation for engaging in protected activity or

12  requesting a protected leave of accommodation.  *Id.*  This complaint referred to the denials of

13  Hayter's 2007 and 2008 applications for reallocation/reclassification.  *Id.*  On August 23, 2011, the

14  DFEH issued a right-to-sue notice.  *Id.*

### C.      Margaret Headd

16      Margaret Headd is an African American woman who holds a Bachelors of Science in

17  Health Science degree and a Masters degree in Public Health.  Headd Decl. ¶ 2.  She began

18  working at the County of Santa Clara Public Health Department in 2003.  MK Decl., Ex. C, Dep.

19  of Margaret Headd ("Headd Dep.") at 19:16-23.  From 2003 until January of 2006, Headd held

20  various non-permanent statuses.  Cox Decl. ¶ 21.  In May of 2006, Headd obtained permanent

21  status in a position with the County, when she was hired as a Health Education Specialist ("HES").

22  Headd Dep. at 32:2-7; Cox Decl. ¶ 25.  Headd began treatment for cancer in December of 2008,

23  and remained on medical leave until October of 2009.  Headd Dep. at 34:9-14; 37:13-15.  On May

24  18, 2009, while on leave, Headd learned that she was being laid off due to budget reductions.

25  Headd Dep. at 56:15-57:3; 174:2-9.

26

27

28

### 1.     Inplacement While on Medical Leave on July 1, 2009

Also in May of 2009, after learning that she would be laid off, Headd indicated her interest in being assigned to a new position through the County's in-placement process, by which the County can transfer laid-off employees to suitable vacant positions if the employee has no right to claim another position.  Headd Dep. 172:24-178:25; Cox Decl. ¶ 29.  On or about July 1, 2009, Headd was in-placed in a vacant part-time Management Aid ("MA") position, and added to the County's reemployment list.[11]  Cox Decl. ¶ 32; Headd Dep. at 56:15-21.  Headd remained on medical leave for the duration of her appointment in that position.  Headd Dep. at 56:15-57:3.  Headd alleges that "L.I.," a non-African American who was also on medical leave at that time, was inplaced in a more desirable position.  Headd Dep. at 90:24-91:22.

### 2.     Administrative Transfer of October 15, 2009

While Headd was still on medical leave, the MA position to which she was reassigned was deleted due to program restructuring.  Headd Dep. at 95:15-96:25 & Ex. 7; Cox Decl.  ¶ 35.  Headd was then administratively transferred to another part-time MA position in the PHD Women, Infants, and Children ("WIC") Program, effective October 15, 2009.  *Id.*  Headd alleges that two other employees, "R.G." and "C.V.," were laid off around the same time that she was administratively transferred, but were subsequently transferred into higher-level positions than Headd.  Headd Dep. at 97:7-15, 98:5-9; Headd Decl. ¶ 4.  Unlike Headd, R.G. and C.V. had permanent underlying statuses in the positions to which they were transferred.  Cox Decl. ¶¶ 25, 36.

### 3.     Headd's Return to Work

In October of 2009, Headd returned from medical leave and remained in her MA position in the WIC program until December of 2011.  *See* Headd Dep. at 178:7-12: 59:17-60:24.  She alleges that the County did not engage in any interactive process with her to determine any limitations

---

[11]   A reemployment list is a list of employees in a given classification who have been laid off from permanent positions.  The individuals are ranked according to seniority, and are entitled to receive no more than two offers of employment for vacancies in that classification.  *See* Cox Decl. ¶30.

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   when she returned to work, and that the County did not inform her of their reasonable

2   accommodation policy, of which she learned in January of 2012.  Headd Decl. ¶ 5.

3           **3.      Headd's Applications for Other Positions**

4           From late 2009 until early 2011, Headd applied to several job openings in the PHD.  First,

5   on December 26, 2009, she applied for a Health Program Specialist ("HPS") position and

6   interviewed for the position on January 21, 2010.  Headd Dep. at 182:12-19; Moresco Decl. ¶ 14.

7   The job was given to R.G.  Headd Dep. at 192:10-20; Moresco Decl. ¶ 14; Decl. of James

8   McPherson ("McPherson Decl."), ECF No. 41, ¶ 4.  Although Headd disputes Defendants' stated

9   reasons for finding that Headd was insufficiently qualified for the position, she acknowledges that

10  R.G. was qualified for the position.  *Id.*

11          On April 29, 2010, Headd applied to transfer into an HPS Position, but was informed that

12  she was not eligible for the transfer.  Headd Dep. at 109:1-3; Moresco Decl. ¶ 15.  Headd admits

13  that she was not in fact eligible to transfer into this position because the salary differential between

14  her original position and the new position was too great to qualify as a "transfer."  Headd Dep. at

15  213:25-214:14.

16          In August of 2010, Headd applied for an HPS position with PHD Administration, for which

17  she interviewed on August 27, 2010.  Headd Dep. at 109:9-11; 220:9-11; Moresco Decl. ¶ 16.

18  Defendants allege that Headd was not selected for the position because she "lack[ed] experience in

19  both program management and administrative processes," and lacked knowledge of County

20  government processes.  Moresco Decl. ¶ 16; Wedel Dep. 284:23-285:15; 288:15-18.  Defendants

21  further allege that Headd did not submit a writing sample as requested, and that her application

22  materials contained multiple spelling, grammatical, and formatting errors.  Moresco Decl. ¶ 16;

23  Wedel Dep. 290:20-291:8.  Headd alleges that she had sufficient experience in management and

24  administrative processes, and that Wedel never requested a writing sample.  Headd Decl. ¶¶ 8-9.

25          In November or December of 2010, Headd applied for a Senior Health Care Program

26  Analyst transfer position but was not referred for an interview, allegedly for lack of sufficient

27  experience.  Moresco Decl. ¶ 17; Headd Decl. ¶ 12.

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    On January 4, 2011, Headd applied for an HPS promotional position.  Moresco Decl. ¶ 18.

2    Headd interviewed for the position, but was not selected to advance to a second round of

3    interviews.  Headd Dep. at 184:23-185:17; Moresco Decl. ¶ 18; Decl. of Barbara Broderick

4    ("Broderick Decl."), ECF No. 39, ¶ 4.  Another PHD employee, "J.P.," was ultimately chosen for

5    the job, allegedly based on specific components of his past work experience.  Moresco Decl. ¶ 18;

6    Broderick Decl. ¶ 6.

7    On July 27, 2011, Headd applied for a Health Planning Specialist II position and a Health

8    Care Program Analyst ("HCPA") II position.  Moresco Decl. ¶ 19.  The first position was deleted

9    before interviews were conducted, and Headd was told she lacked the depth and scope of analytical

10   and administrative experience required for the classification of the second position.  *Id.*  On

11   September 19, 2011, Headd interviewed for an HPS position, but another PHD employee, "L.C.,"

12   was selected, allegedly because she better matched the criteria for the job.  Moresco Decl. ¶ 20;

13   Broderick Decl. ¶¶ 8, 10.

14   On December 30, 2011, Headd accepted an offer from the County reemployment list for an

15   HES position.  Headd Dep. at 169:21-170:20; 247:18-248:1; Moresco Decl. ¶ 21.

16   **5.    2011 DFEH Complaint**

17   On June 7, 2011, Headd filed a DFEH complaint alleging discrimination based on race, sex,

18   age, and medical condition (cancer) based on her denial of promotions in August of 2010 and

19   February of 2011.  Headd Dep. at 348:6-349:21 & Ex. 4.  The DFEH issued a right-to-sue notice

20   on the same date.  MK Decl., Ex. I.  On June 28, 2011, Headd filed an amended complaint alleging

21   discrimination based on race, sex, age, disability, and medical condition and alleged the same

22   particulars as her June 7, 2011 complaint.  Headd Dep. at 348:6-349:21 & Ex. 4.  On August 29,

23   2011, the DFEH issued a second right-to-sue notice.  MK Decl., Ex. I.

24   **IV.    LEGAL STANDARD**

25   A court shall grant summary judgment when it is demonstrated that there exists no genuine

26   dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law.

27   *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The party

28

15

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

**United States District Court**
For the Northern District of California

1  seeking summary judgment bears the initial burden of informing a court of the basis for its motion

2  and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an

3  absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

4  (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See*

5  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute is "genuine" as to a

6  material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-

7  moving party. *See Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

8         Where the moving party will have the burden of proof on an issue at trial, the movant must

9  affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See*

10  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving

11  party will have the burden of proof on an issue at trial, the movant may prevail by presenting

12  evidence that negates an essential element of the non-moving party's claim or by merely pointing

13  out that there is an absence of evidence to support an essential element of the non-moving party's

14  claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102-03 (9th Cir.

15  2000). If a moving party fails to carry its burden of production, then "the non-moving party has no

16  obligation to produce anything, even if the non-moving party would have the ultimate burden of

17  persuasion." *Id.* If the moving party meets its initial burden, the burden then shifts to the opposing

18  party to establish that a genuine dispute as to any material fact actually exists. *See Matsushita*

19  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest

20  upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets

21  forth specific facts showing that there is a genuine issue for trial." *See Estate of Tucker*, 515 F.3d

22  1019, 1030 (9th Cir. 2008) (internal quotation marks and citation omitted).

23         The evidence of the opposing party is to be believed, and all reasonable inferences that may

24  be drawn from the facts placed before a court must be drawn in favor of the opposing party. *See*

25  *Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003). However, "[b]ald assertions

26  that genuine issues of material fact exist are insufficient." *See Galen v. County of Los Angeles*, 477

27  F.3d 652, 658 (9th Cir. 2007); *see also Day v. Sears Holdings Corp.*, No.11-09068, 2013 WL

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1   1010547, *4 (C.D. Cal. Mar. 13, 2013) ("Conclusory, speculative testimony in affidavits and

2   moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

3   Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely

4   colorable' or 'is not significantly probative.'" *See Anderson*, 477 U.S. at 249-50; *see also Hardage*

5   *v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006) (same).  If the nonmoving party fails to

6   produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled

7   to summary judgment.  *See Nissan Fire & Marine*, 210 F.3d at 1103.

8   **V.      DISCUSSION**

9           Plaintiffs' ten causes of action can be grouped into two distinct categories.  Plaintiffs' first

10  set of claims arise from California's Fair Employment and Housing Act ("FEHA"), are subject to

11  the procedural requirements of that statute, and are brought only against Defendant County.  These

12  claims consist of: (1) retaliation in violation of FEHA (first cause of action); (2) failure to protect

13  from discrimination under FEHA (second cause of action); (3) disparate treatment discrimination

14  in violation of FEHA (third, fourth, and fifth causes of action); and (4) disparate impact

15  discrimination in violation of FEHA (sixth, seventh, and eight causes of action).  Plaintiffs' second

16  distinct category of claims allege violations of 42 U.S.C. § 1983 and are brought against all

17  Defendants for (1) negligent hiring, training, supervision and retention (ninth cause of action); and

18  (2) retaliation for exercising free speech (tenth cause of action).

19          Plaintiffs' Opposition to the Motion for Summary Judgment alleges numerous facts and

20  causes of action that were not included in the Amended Complaint.  The Court will not consider

21  claims raised for the first time at summary judgment which Plaintiffs did not raise in their

22  pleadings.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint

23  guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in

24  order to defend against the plaintiff's allegations."); *see also Pickern v. Pier 1 Imports (U.S.), Inc.*,

25  457 F.3d 963, 968 (9th Cir. 2006) (noting that plaintiff could not raise new factual allegations at

26  summary judgment because allegations not included in the complaint failed to "give the defendant

27

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

fair notice of what the plaintiff's claim [were] and the grounds upon which [they] rest[ed]," as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure).

The Court first addresses each Plaintiff's individual FEHA disparate treatment and FEHA retaliation claims against Defendant County (Plaintiffs' first, third, fourth, and fifth causes of action), and then collectively addresses Plaintiffs' FEHA disparate impact claims against Defendant County (Plaintiffs' sixth, seventh, and eighth causes of action); Plaintiffs' FEHA failure to protect claim against Defendant County (Plaintiffs' second cause of action); and Plaintiffs' 1983 claims against all Defendants (Plaintiffs' ninth and tenth causes of action). For the reasons stated below, the Court DENIES Defendants' Motion with respect to Plaintiff Burrell's FEHA disparate treatment claim alleging discrimination on the basis of race in 2010 (Plaintiffs' third cause of action), and further DENIES Defendants' motion with respect to Plaintiff Burrell's FEHA failure to protect claim (Plaintiffs' second cause of action). The Court GRANTS Defendants' motion with respect to all other claims, which include all claims against the individual Defendants Dan Peddycord, Rae Wedel, and Marty Fenstersheib.

### A.     Plaintiff Burrell's Disparate Treatment and Retaliation Claims under FEHA

Defendants move for summary judgment on Plaintiff Burrell's FEHA disparate treatment and retaliation claims, contending that Burrell failed to exhaust her administrative remedies, and filed her claims after the statute of limitations expired. Defendants further argue that Burrell has not rebutted Defendants' legitimate, nondiscriminatory reasons for their failure to promote Burrell. The Court addresses each in turn.

#### 1.     Defendants' FEHA Administrative Exhaustion and Statute of Limitations Challenges

##### a.     Insufficient Exhaustion Bars Burrell's Gender and Age Discrimination Claims

Prior to bringing a civil suit on a FEHA cause of action, a plaintiff must exhaust her administrative remedies. *See Rojo v. Kliger*, 52 Cal. 3d 65, 83 (1990). Exhaustion requires filing a complaint with the DFEH within one year of the date of the alleged unlawful practice and then obtaining a notice of the right to sue. Cal. Gov't Code § 12960; *see Romano v. Rockwell Int'l, Inc.*,

18

14 Cal. 4th 479, 492 (1996).  Failure to exhaust deprives the court of jurisdiction over a plaintiff's cause of action.  *Miller v. United Airlines, Inc.*, 174 Cal. App. 3d 878, 890 (1985).

For a Plaintiff "[t]o exhaust his or her administrative remedies as to a particular act made unlawful by the Fair Employment and Housing Act, the claimant must specify that act in the administrative complaint, even if the complaint does specify other cognizable wrongful acts." *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1724 (1994).  "The scope of the written administrative charge defines the permissible scope of the subsequent civil action." *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001) (citing *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1121-23 (1989)).  "Allegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust." *Id.*

However, in order to accomplish the broad purposes of FEHA—including the elimination of employment discrimination—these procedural requirements are to be construed liberally.  *See* Cal. Gov't Code § 12920; Cal. Gov't Code § 12993(a).  Therefore, the district court does have jurisdiction over a civil claim if it is "reasonably related to the allegations of the [administrative] charge."  *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973); *see Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 268 (2009) ("[W]hat is submitted to the DFEH must not only be construed liberally in favor of the plaintiff, it must be construed in light of what might be uncovered by a reasonable investigation"); *see also Okoli v. Lockheed Tech. Operations*, 36 Cal. App. 4th 1607, 1615 (1995) (noting, in the analogous EEOC context, that "if an investigation of what *was* charged in the [administrative complaint] would necessarily uncover other incidents that were not charged, the latter incidents could be included in a subsequent action.") (emphasis in original).  Thus, "[i]t is sufficient that the [DFEH] be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts."  *Nazir*, 178 Cal. App. 4th at 267 (internal quotation marks and citation omitted).

The parties do not dispute that Burrell exhausted her administrative remedies as to her racial discrimination claim based on the September 3, 2010 denial of her promotion.  Because Burrell filed a DFEH complaint alleging racial discrimination on October 26, 2010, which was

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    based on the September 3, 2010 denial of her promotion, and then obtained a right to sue letter

2    from the DFEH on May 27, 2011, there is no question that Burrell timely exhausted her

3    administrative remedies.  *See* MK Decl., Ex. G ("Burrell DFEH Complaint").

4            The question here is whether Burrell's gender and age discrimination claims, which were

5    not explicitly alleged in Burrell's October 26, 2010 DFEH complaint, are "reasonably related" to

6    Burrell's racial allegations such that they may be considered properly exhausted by those charged

7    allegations and the Court thus has jurisdiction over them.  Burrell contends that her gender and age

8    discrimination claims are "reasonably related" to her racial discrimination claim because there is a

9    strong likelihood that the DFEH investigation into her racial discrimination claim "would reveal

10   that, in addition to her race, there were gender and age . . . claims."  Opp'n at 17.

11           In support of Burrell's position that her gender and age discrimination claims are

12   reasonably related to her racial discrimination claim, Burrell cites to the letter that she wrote that

13   accompanied her DFEH form complaint.  This letter, in part, states the following:

14           More recently, with the knowledge that another opportunity for promotion was
             coming available, management took away a portion of my responsibilities to lessen
15           my case for promotion.  When the promotion was given to another *Caucasian* co-
             worker (who did not at all meet the requirements), I was then given a significant
16           portion of her duties.  Essentially, the workload of the promoted staff was lightened
             while I took on more (her work) with no compensation.
17

18   Opp'n at 17 (citing language found in Burrell Decl., Ex. 37) (emphasis added).  Burrell contends

19   that the reference to a Caucasian co-worker in this letter was sufficient to trigger a broad

20   investigation based on gender and age because men and women make up the class of "Caucasian

21   workers."  *See* Opp'n at 17.  However, Burrell's letter indicates that the Caucasian co-worker was

22   of the same gender as Burrell, female.  In addition, this letter makes no reference to age.

23   Therefore, it is not clear why Burrell's DFEH complaint based on racial discrimination would

24   reasonably trigger an investigation into discrimination on the basis of either gender or age.  *See*

25   *Okoli*, 36 Cal. App. 4th at 1615 (noting that it would not be proper to expand a claim "when the

26   difference between the charge and the complaint is a matter of adding an entirely new basis for the

27   alleged discrimination. . . . For instance, a complaint alleging race discrimination is neither 'like or

28

                                                    20

related to' nor likely to be discovered in a 'reasonable' investigation of a charge of sex discrimination.'") (internal citation omitted); *cf. Rodriguez v. Airborne Express*, 265 F.3d 890, 898 (9th Cir. 2001) (holding that exhaustion of administrative remedies alleging discrimination on the grounds of being Mexican-American was insufficient to exhaust a claim of disability discrimination); *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir. 1987) (holding that allegations of sex and age discrimination in civil complaint were not encompassed by charge filed with the DFEH alleging only national origin discrimination).

Burrell has not exhausted her administrative remedies as to her gender and age discrimination claims because they were not raised in her DFEH complaint and accompanying letter, and are not reasonably related to her racial discrimination claim.  Accordingly, Defendants' Motion for Summary Judgment as to Burrell's gender and age discrimination claims is GRANTED.

### b.    Statute of Limitations Bars Burrell's 2002-2009 Claims

Defendants also argue that each employment decision for Burrell between 2002 and 2009 is barred by FEHA's statute of limitations because each occurred more than one year before Burrell's October 26, 2010 DEFH filing.  Mot. at 18.  Specifically, Defendants contend that Burrell's 2002 reassignment as an HCPM II, Burrell's 2008 denial of promotion in favor of J.M., and the 2008 denial of Burrell's application for reclassification all occurred more than one year before October 26, 2010.

To be timely, a DFEH complaint must be filed within one year of the alleged violation.  *See* Cal. Govt. Code § 12960(d).  While Section 12960(d) includes certain exceptions to the statute of limitations, Plaintiffs do not assert that any of these exceptions apply to this case.[12]  Instead,

---

[12]   In her declaration, Burrell argues for the applicability of "equitable tolling," noting that she would have filed a DFEH complaint in 2008 if she had known of the report by Kathy Buchanan, recommending that Hayter be reclassified as PHN III.  Burrell Decl. ¶ 87-88.  Plaintiffs' allegations regarding this report are discussed *infra*, Part V.B.2.a.  Regardless of these allegations, Cal. Govt. Code § 12960(d) specifically provides for a 90-day extension of FEHA's one year limitations period in instances of delayed discovery of an unlawful practice.  Here, Burrell has not identified the delayed discovery of an unlawful practice, nor argued that she filed her complaint within 90 days of such practice.  *Cf. McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 106, 194

21

Plaintiffs cite the "continuing violations doctrine," which allows plaintiffs to seek remedies for actions that otherwise would be time-barred, if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1057-59 (2005) (noting the underlying policy of discouraging early litigation and the adjudication of unripe claims).

To establish a continuing violation, a plaintiff must establish that the actions occurring outside of the limitations period should be viewed as a single, actionable course of conduct because: "(1) the actions are sufficiently similar in kind; (2) they occur with sufficient frequency; and (3) they have not acquired a degree of 'permanence' so that employees are on notice that further efforts at informal conciliation with the employer to obtain accommodation or end harassment would be futile." *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823 (2001); *see generally Yanowitz*, 36 Cal.4th at 1057-59 (extending continuing violations doctrine from accommodation to discrimination claims). In analyzing the applicability of the statute of limitations and the continuing violations doctrine, the Court notes that, unlike in Title VII cases, courts have refused to take a strict approach to the FEHA limitations period, construing the statute of limitations liberally "so as to promote the resolution of potentially meritorious claims on the merits." *Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479, 493-94 (1996); *see also Yanowitz*, 36 Cal. 4th at 1057–59 (distinguishing between Title VII and FEHA, and emphasizing FEHA's "twin policy goals of encouraging informal resolution of disputes and avoiding premature lawsuits").

The Court finds that the continuing violations doctrine is inapplicable to this case. Burrell alleges that, since 2002, she suspected that she was being discriminated against based on her race. *See* Burrell Decl. ¶ 10. She now seeks to challenge specific incidents of discriminatory non-promotion. [13] *See* AC ¶ 92 ("Burrell was repeatedly passed over for promotions."). Even if the

---

P.3d 1026, 1036 (2008) (defining equitable tolling as a doctrine available when an injured person "has several remedies and, reasonably and in good faith, pursues one.").

[13] Plaintiffs' Opposition argues for the first time that Plaintiffs' declarations "show a pattern and practice of discrimination against African-American [*sic*] dating back to 2002 and continuing to date." Opp'n at 22. The Court notes that no pattern and practice of discrimination is alleged in the Amended Complaint, and that it is raised in Plaintiffs' Opposition only with respect to the continuing violations doctrine. Moreover, Plaintiffs' Opposition does not elaborate on this new

22

**United States District Court**
For the Northern District of California

1   2002 and 2008 actions could be considered "sufficiently similar in kind" to the 2010 action, and

2   could be found to have occurred "with reasonable frequency," the Court finds that the 2002 and

3   2008 actions acquired a degree of permanence which should have put Burrell on notice that further

4   efforts at informal conciliation with the employer to end the alleged discrimination would be futile.

5   *See Richards*, 26 Cal. 4th at 823.  Thus, Burrell cannot establish the third element of a continuing

6   violation and these claims are time-barred.

7          Specifically, the Court finds that Burrell's 2002 reassignment as a HCPM II rather than as a

8   SrHCPM, pursuant to a consultant's classification study, acquired a degree of permanence at the

9   time the decision was made.  *See* Cox Decl. ¶ 5 (describing the County's reclassifications of mid-

10  level managers following a consultant's study and a County Board of Supervisors amendment to

11  the County Salary ordinance); Burrell Dep. 32:24-34:10; 36:22-37:5 (explaining that Burrell

12  complained about the results of the study to her union, but the union representative responded that

13  the union did not intend to challenge the study or file a grievance on her behalf).  Several courts

14  have found that discrete instances of denials of hiring or promotion are generally made permanent

15  when a plaintiff is informed that he or she has not been hired or promoted to a position.  *See*

16  *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 67 (2000) (finding that each decision not

17  to hire an applicant was sufficiently final to bar the applicant's reliance on the continuing

18  violations doctrine); *Maridon v. Comcast Cable Commc'ns Mgmt., LLC*, No. 12-2109, 2013 WL

19  1786592 at *13 (N.D. Cal. Apr. 25, 2013) (finding that a plaintiff's "failure to secure past

20  promotions in a number of specific, discrete instances" was final as to each incident, even if the

21  plaintiff was not convinced that the employer would never promote her in the future).  As with the

22  decisions not to hire or promote the plaintiffs in *Morgan* and *Maridon*, Burrell's reclassification

23  appears to be a unique, one-time event.  Burrell was on notice, or should have been, that challenges

24  to the reclassification would be futile no later than the time her union declined to take action

25

26  pattern and practice theory.  The Court finds that Plaintiffs' new pattern and practice theory and
    allegations are not properly before the Court.  *See Coleman*, 232 F.3d at 1292 (complaint guides

27  the parties discovery and puts defendant on notice of evidence needed for its defense); *see also*
    *Pickern*, 457 F.3d at 969 (holding that plaintiff cannot raise new factual allegations of which

28  defendant had no prior notice at summary judgment).

23

United States District Court
For the Northern District of California

1   challenging the result.  *See Morgan*, 88 Cal. App. 4th at 67; *Maridon*, 2013 WL 1786592, at *9-11;

2   *see also Gardner v. City of Berkeley*, 838 F. Supp. 2d 910, 921 (N.D. Cal. 2012) (finding

3   employment actions final when "[e]ach event involved a final decision to either retire or not

4   reinstate Plaintiff, with no opportunity for further discussion . . . [Although Defendants] could still

5   hire Plaintiff in the future, a final decision was still made to not hire Plaintiff *at that time.*")

6   (emphasis in original).  Thus, a claim based on Burrell's 2002 reassignment is time-barred, because

7   the reassignment became permanent in 2002 and the continuing violations doctrine is inapplicable.

8           Similarly, the Court finds that the 2008 denial of Burrell's promotion and reclassification

9   became permanent at the time the decisions were made.  The first 2008 event that Burrell

10  challenges—the appointment of J.M., a non-African American employee, into a SrHCPM position

11  for which Burrell had been preparing—became final no later than the time when J.M. was

12  administratively transferred into the position.  *See* Burrell Dep. 71:9-72:19; 76:7-15; Cox Dec. ¶ 6.

13  The second 2008 event that Burrell challenges—the denial of her application for reclassification—

14  also involved a final decision.  As with a denial of an application for promotion, the denial of

15  Burrell's request for reclassification involved a specific and discrete application process and

16  acquired permanence after Burrell: (1) met with her union representative and Senior Human

17  Resources Analyst Christine Goodson on October 16, 2008, Goodson Decl. ¶ 5; (2) received a

18  written explanation of the decision on November 3, 2008, Goodson Decl. ¶ 6; and (3) did not

19  pursue an appeal.  *See* Burrell Dep. 123:19-124:16 (stating that Burrell believed that she would not

20  change Goodson's mind about the denial of her request for reclassification, and that Burrell did not

21  pursue a grievance or appeal).  Thus, claims based on the 2008 appointment of J.M. and the 2008

22  denial of Burrell's application for reclassification are time-barred because these employment

23  actions became permanent in 2008 and the continuing violations doctrine is inapplicable.  *See*

24  *Morgan*, 88 Cal. App. 4th at 66; *Richards*, 26 Cal. 4th at 823.

25

26

27

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment as to Burrell's 2002 and 2008 claims.[14]

### c.   Ripeness and Insufficient Exhaustion Bar Burrell's Retaliation Claim

Lastly, Defendants challenge Burrell's FEHA retaliation claim as insufficiently exhausted. Burrell, in addition to the other two Plaintiffs, alleges retaliation under FEHA against the County on the basis of filing a complaint to the DFEH and Equal Employment Opportunity Commission ("EEOC").  *See* AC ¶ 81 ("Defendant COUNTY took adverse employment action against Plaintiffs in violation of [FEHA] by retaliating against Plaintiffs for participating in statutorily protected activity.  Plaintiffs' complaints to the [DFEH] and to the [EEOC] were all protected activities.").  The Court finds Burrell's allegations of retaliation to be either unripe or unexhausted.

First, the only adverse employment actions against Burrell that were alleged in either the DFEH complaint or the federal Amended Complaint took place *prior* to the filing of the DFEH complaint.  *See* AC ¶ 40 (concluding Burrell's chronological factual recitation with the filing of the DFEH complaint on October 26, 2010); MK Decl., Ex. G (DFEH complaint listing date of most recent discrimination as September 3, 2010).  It is illogical that adverse employment actions that occurred prior to the filing of a DFEH complaint would constitute retaliation for the filing of that administrative complaint.  At the April 4 hearing, Plaintiffs' counsel could not explain this quandary, and instead stated that the retaliation claim was merely a "prospective pleading," and thus alleged in anticipation of future retaliation after the filing of the DFEH complaint.  Plaintiffs' anticipation of "prospective" retaliation is not ripe for this adjudication.

Additionally, although not mentioned in the Amended Complaint's retaliation cause of action, the Amended Complaint's general recitation of facts alleges that Burrell was retaliated against because Burrell supported Hayter's application for reclassification.  *See* AC ¶ 34.  In Burrell's declaration, Burrell alleges that this retaliation occurred on July 16, 2008, when Alvarado

---

[14]  Despite the fact that these previous incidents do not represent distinct bases for liability, Plaintiff may introduce evidence about these incidents as relevant to her surviving claim.  *See Maridon,* LLC, 2013 WL 1786592 at *14 n.6. (citing *Gardner*, 838 F. Supp. 2d at 921).

25

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  removed two of the programs for which Burrell was responsible.  Burrell Decl. ¶ 38-39; *see also*

2  Opp'n at 5.  In the Amended Complaint and in Burrell's deposition, Burrell alleged that this

3  retaliation occurred in 2009, though she could not remember the month.  *See* AC ¶ 34; Burrell Dep.

4  125:8-17; 128:15-129:6.

5          Even if this allegation were sufficiently pleaded, the Court finds that it was insufficiently

6  exhausted.  Burrell's 2010 DFEH complaint refers only to her non-promotion, and does not

7  reference removal of job duties as an act of retaliation.  *See* MD Decl., Ex. G; Burrell Decl., Ex.

8  37.  Moreover, Burrell does not suggest that a DFEH investigation into her charge of

9  discriminatory non-promotion in September of 2010 would have uncovered an alleged act of

10  retaliation for supporting Hayter's promotion in 2008.  *Compare Wills v. Superior Court*, 194 Cal.

11  App. 4th 312, 157 (2011) (modified) (finding a retaliation claim insufficiently exhausted by a

12  discrimination claim where there was no indication in the administrative complaint of any conduct

13  related to the alleged retaliation), *with Washington v. California City Correction Ctr.*, 871 F. Supp.

14  2d 1010, 1023 (E.D. Cal. 2012) (noting that a retaliation claim could be deemed "like and

15  reasonably related to" a general claim of discrimination when the allegations related to the same

16  adverse employment actions).  Therefore, as with Burrell's gender and age discrimination claims,

17  the Court finds this claim to be insufficiently exhausted.[15]  The Court GRANTS Defendants'

18  Motion for Summary Judgment as to Burrell's retaliation claim.

19          **2.      Plaintiff Burrell's Surviving Disparate Treatment Claim under FEHA**

20          Next, Defendants move for summary judgment on Plaintiffs' third cause of action, Burrell's

21  allegation of racial discrimination based on disparate treatment.  *See* Mot. at 20.  Disparate

22  treatment is "*intentional* discrimination against one or more persons on prohibited grounds."  *Guz*

23  *v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 n.20 (2000) (emphasis in original).  Prohibited

24  discrimination based on disparate treatment occurs when an "employer simply treats some people

25  less favorably than others because of their race, color, religion, sex, or national origin."  *Teamsters*

---

[15] Accordingly, the Court need not reach the question of whether the continuing violations doctrine could save this claim from being barred by FEHA's one year statute of limitations.  *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1057-59 (2005).

26

*v. United States* 431 U.S. 324, 335-336, n.15 (1977).  "Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment."  *Id.*

Burrell alleges that, in 2010, she was improperly denied classification as a SrHCPM due to her race.  As a basis for this allegation, Burrell asserts that, in February of 2010, Burrell met with her new manager, Charis Subil, and presented a proposal for her promotion to a SrHCPM position.  Burrell Dep. at 137:9-20.  Subil agreed Burrell should be promoted.  Burrell Dep. at 138:6-9.  Then, in March of 2010, Burrell met with the new PHD director, Dan Peddycord, who also expressed support for her proposal.  Burrell Decl. ¶ 45.  However, in September of 2010, Burrell alleges that she was denied a promotion to the position of SrHCPM without sufficient justification.  AC ¶¶ 38, 92, 93.  Burrell contends that, during the time Burrell's proposal for promotion was pending, PHD Administrative Services Manager Rae Wedel appointed a less qualified non-African American employee, C.M., to fill an open SrHCPM position.  *See* Opp'n at 4-5; MK Decl., Ex. G.

Defendants dispute that Burrell can establish a disparate treatment claim on this basis, arguing that, "[t]he County had legitimate, non-discriminatory reasons for promoting C.M. to SrHCPM."  Mot. at 20.  For the reasons stated herein, the Court finds that a genuine dispute of material fact exists as to whether Defendants in fact denied Burrell a promotion for non-discriminatory reasons or because of Burrell's race.

"California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment."  *Guz*, 24 Cal. 4th at 354 (noting California courts' reliance on the federal burden shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Generally, to establish a prima facie case of disparate treatment under FEHA, a plaintiff must provide evidence that:

> (1) [s]he was a member of a protected class, (2) [s]he was qualified for the position [s]he sought or was performing competently in the position [s]he held, (3) [s]he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

*Id.* at 355.  Once the prima facie case is established, "the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine issue of fact and to

1    justify a judgment for the [employer], that its action was taken for a legitimate, nondiscriminatory

2    reason." *Id.* at 355-56 (internal quotation marks and citations omitted).  If the employer sustains

3    the burden, "[t]he plaintiff must then have the opportunity to attack the employer's proffered

4    reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.*

5    at 356.  However, when an employer moves for summary judgment, "the burden is reversed . . .

6    because the defendant who seeks summary judgment bears the initial burden."  *Dep't of Fair Emp't*

7    *& Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (citing *Hanson v. Lucky Stores,*

8    *Inc.*, 74 Cal. App. 4th 215, 224 (1999)); *see Martin v. Lockheed Missiles & Space Co.*, 29 Cal.

9    App. 4th 1718, 1730 (1994) ("A defendant seeking summary judgment must bear the initial burden

10   of showing that the action has no merit, and the plaintiff will not be required to respond unless and

11   until the defendant has borne that burden."); *see also Rangel v. Am. Med. Response West*, No. 09-

12   01467, 2013 WL 1785907, *9 (E.D. Cal. Apr. 25, 2013) (same).

13          To prevail on summary judgment, the employer is "required to show either that (1) plaintiff

14   could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate,

15   nondiscriminatory reason for its decision to [take an adverse employment action]."  *Lawler v.*

16   *Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013) (internal quotation marks and

17   citations omitted).  If the employer meets its burden, the employee must demonstrate either "that

18   the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material

19   to the defendant's showing."  *Lucent Techs., Inc.*, 642 F.3d at 746 (quotation omitted).  A plaintiff

20   can satisfy this latter option by "'produc[ing] substantial responsive evidence that the employer's

21   showing was untrue or pretextual.'"  *Id.* (quoting *Hanson*, 74 Cal. App. 4th at 225); *see also*

22   *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (holding that a plaintiff "may

23   establish pretext either directly by persuading the court that a discriminatory reason more likely

24   motivated the employer or indirectly by showing that the employer's proffered explanation is

25   unworthy of credence.").

26          "Where evidence of pretext is circumstantial, rather than direct," as in this case, "the

27   plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext."  *Earl v.*

28

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1     *Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011) (citing *Godwin*, 150 F.3d at

2     1222).  "'An employee in this situation cannot simply show the employer's decision was wrong,

3     mistaken or unwise.'"  *Lucent Techs., Inc.*, 642 F.3d at 746 (citing *Morgan*, 88 Cal. App. 4th at

4     75).  "'Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies,

5     incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a

6     reasonable factfinder could rationally find them unworthy of credence . . . and hence infer that the

7     employer did not act for the . . . non-discriminatory reasons.'"  *Id.* (internal quotation marks and

8     citation omitted).  Nevertheless, the Ninth Circuit has made clear that courts should be cautious in

9     granting summary judgment for employers on discrimination claims.  *See Lam v. University of*

10    *Hawai'i*, 40 F.3d 1551, 1564 (9th Cir. 1994) (amended) (finding that the ultimate question in a

11    discrimination case can only be resolved through a "searching inquiry") (internal quotation marks

12    and citation omitted).

13          Defendants do not address whether Burrell can establish a prima facie case of disparate

14    treatment.  Rather, Defendants state that there were legitimate, nondiscriminatory reasons for

15    promoting C.M. rather than Burrell to a SrHCPM position.  Defendants set forth evidence that: (1)

16    C.M. worked temporarily in the SrHCPM position for six months prior to receiving the promotion,

17    while D.F., the employee who previously held the position, was on leave; (2) the transfer of C.M.

18    to D.F.'s position comported with the county's union contract and the County Merit System Rules;

19    and (3) Burrell admitted that C.M. had more experience than Burrell in some areas relevant to

20    D.F.'s position.  *See* Mot. at 20; Cox Decl. ¶ 8; Burrell Dep., Ex. 1 to MK Decl., at 194:14-195:22.

21          However, Defendants' showing fails to address the full scope of Burrell's disparate

22    treatment claim.  Burrell does not exclusively challenge C.M.'s appointment to D.F.'s position.

23    Burrell also challenges the denial of her proposed promotion to a SrHCPM code at the same time

24    that C.M. was promoted to a SrHCPM code.  Defendants do not discuss the denial of Burrell's

25    proposal for a promotion at all in their analysis of Burrell's disparate treatment claim.  Mot. at 20.

26    In fact, Defendants' only reference to Burrell's proposal is in Defendants' statement of facts, in

27    which Defendants state the following: "Burrell contends that Peddycord told her she would not be

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

**United States District Court**
For the Northern District of California

1    promoted because she had not participated in H1N1 activities." *See* Mot. at 5 (citing Burrell Dep.

2    at 148:15-19). Defendants do not, however, assert that this is their reason for denying Burrell's

3    promotion. Thus, without offering any legitimate explanation for denying Burrell's proposed

4    promotion, Defendants have failed to carry their burden on summary judgment.

5        Moreover, even assuming Defendants' reasons for appointing C.M. to an SrHCPM code

6    were sufficient to satisfy Defendants' burden, Burrell has set forth sufficient evidence to raise a

7    triable issue of material fact as to whether Defendants' showing is "untrue or pretextual." *See*

8    *Lucent Techs., Inc.*, 642 F.3d at 746.

9        First, Burrell contends that Defendants' showing may be untrue or pretextual because she

10   was more qualified for a SrHCPM position than C.M. Importantly, Burrell contends that the

11   SrHCPM code to which C.M. was appointed was not linked to the actual job C.M. performed or

12   contingent on the specific tasks required for the position to which C.M. was appointed. *See*

13   Burrell. Dep. 158:23-25. Consequently, the SrHCPM code could have been used anywhere in the

14   department. As such, Burrell asserts that the SrHCPM code would have been more appropriate for

15   her because she was more qualified for performing the overall tasks of a SrHCPM:[16]

16       If one were to place C.M. and me side by side, there would be no daylight between
17       us in our abilities and qualifications to perform the duties of SrHCPM. In fact, I
         was more qualified than C.M. at the time Wedel appointed C.M. to the position in
18       April 2010, I managed the following programs: Black Infant Health, Adolescent
         Family Life, and Immunization Education and supervised approximately 11 line
19       staff and one manager. I was responsible for a budget of approximately $3.5 million.
         In contrast and comparison to C.M. who managed, at [*sic*] time of Wedel's
20       appointment, one program and two staff and no budget.

21   Burrell Decl. 67.

22       Defendants do not address Burrell's qualifications for performing the SrHCPM position,

23   but rather object to this testimony as lacking foundation. The Court infers personal knowledge as

24

25   ---

     [16] As outlined in Goodson's report, "the Senior Health Care Program Manager has overall
26   responsibility for overseeing major program activities. . . . Decisions generally require
     independent judgment and to develop policy guidelines for other program activities. The
27   incumbent would possess a thorough understanding of multiple or complex program activities and
     legal operational mandates." Goodson Decl., Ex Y ("Summary Classification Report, Health Care
28   Program Manager II – Department of Public Health: Alma Burrell").

30

United States District Court
For the Northern District of California

1   the basis of the testimony, and Defendants do not provide any contrary evidence.  Defendants

2   further seek to exclude this testimony by alleging that it contradicts Burrell's deposition testimony

3   that, in C.M.'s new position, C.M. manages the contracts unit, drafts MOUs and transmittal service

4   agreements, and is a compliance officer, and that C.M. had more experience in those areas than

5   Burrell did.  Reply at 3; Burrell Dep. 194:6-195:22.  Defendants submit that Burrell is thus

6   precluded from asserting that she is equally or more qualified.  *See* Reply at 3 & n.3 (citing

7   *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975), for the proposition

8   that, "[i]f a party who has been examined at length at his deposition could raise an issue of fact

9   simply by submitting an affidavit contradicting his prior deposition testimony, this would greatly

10  diminish the utility of summary judgment on screening out sham issues of fact.").  However, on

11  summary judgment, all justifiable inferences are to be drawn in favor of the non-movant, in this

12  case Burrell.  *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th

13  Cir. 1988) (en banc).  It is not clear that Burrell's concession that C.M. had more experience in

14  certain areas relevant to D.F.'s position directly contradicts Burrell's statement that C.M. was less

15  qualified for a SrHCPM code.  Accordingly, Defendants' objection is OVERRULED.

16  Accordingly, there is a triable issue of fact with respect to the relative qualifications of Burrell and

17  C.M. for a SrHCPM position.

18          Second, Burrell contends that Defendants' showing is questionable because Defendants

19  refused to provide any explanation of why Burrell was not promoted to the SrHCPM position,

20  despite her qualifications.  Notably, Burrell alleges that, when she asked Peddycord in September

21  of 2010 why she was not qualified for the promotion, Peddycord responded by stating: "You

22  deserve an answer.  I should give you an answer, but I'm not going to be pressed into giving you an

23  answer at this point."  Burrell Dep. 161:13-16.  Burrell conveyed the importance of a response by

24  stating, "If you can't tell me, then I'll be back here next year.  I'll be back here the year after next.

25  I'll be back here in two months.  I need someone to be honest and frank with me and tell me what

26  the real problem is."  Burrell Dep. 161:7-12.  Peddycord allegedly stated that he would give an

27  answer within two weeks, but never did.  Burrell Dep. 161:17-162:4.  Defendants do not dispute

28

                                                    31

United States District Court
For the Northern District of California

1   that this conversation occurred, or that Peddycord failed to provide an explanation of the reasons

2   for denying Burrell's attempts to become a SrHCPM.  *See* Mot. at 5.  The Court finds that

3   Defendants' failure to address the reasons for the denial of Burrell's promotion proposal also

4   presents a triable issue of fact as to whether the denial of Burrell's promotion was because of her

5   race or because of legitimate business reasons.

6        Third, Burrell introduces evidence that raises questions about the general treatment of

7   African Americans within the PHD, which further supports Burrell's allegations of pretext.  For

8   example, Burrell references a meeting from April 24, 2010, in which Wedel allegedly made a

9   comment that "the African-American population is only about 2.9 percent in Santa Clara County"

10  and then said either "that's pretty insignificant" or that the African American population "couldn't

11  be considered a community."  Burrell Decl. ¶ 91; *see also* Hayter Dep. 46:7-46:25; Hayter Decl.

12  ¶ 15.  However, in Burrell's deposition, she described her memory of Wedel's comment as "more

13  of an impression" that "the population that we're serving isn't as significant."  Burrell Dep. at

14  266:20-267:1-7.  After this meeting, Wedel allegedly made a comment about "these people,"

15  although the context of the comment was unclear.  Burrell Dep. at 241:4-241:5.

16       The Court notes that "discriminatory thoughts, beliefs, or stray remarks that are

17  unconnected to employment decisionmaking" cannot alone support a disparate treatment claim

18  under FEHA.  *See Harris v. City of Santa Monica*, 56 Cal. 4th 203, 231 (2013) (holding that FEHA

19  does not prohibit discrimination "in the air," and emphasizing FEHA's causation requirement); *but

20  see Reid v. Google, Inc.*, 50 Cal. 4th 512, 539 (2010) (rejecting categorical exclusion of "stray

21  remarks" evidence).  Nevertheless, in light of the disputed facts with respect to Burrell and C.M.'s

22  relative qualifications for a SrHCPM position, and PHD's failure to explain the denial of Burrell's

23  promotion, this comment provides further support for the Court's finding that there are factual

24  questions about the validity of Wedel's purported non-discriminatory reasons for appointing C.M.

25  to a SrHCPM position rather than Burrell.

26       Additionally, Burrell notes that, during Wedel's deposition, Wedel admitted that she has

27  only hired two African Americans and promoted only one in her 24 years as a manager with hiring

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

authority.  *See* Burrell Decl. at ¶ 63; Wedel Dep. at 145:4-2.  This evidence cannot alone constitute the significant and substantial evidence required to demonstrate pretext, but is consistent with the other factors that the Court finds suggestive of pretext.  *See McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004) (finding circumstantial evidence of pretext based, in part, on absence of evidence to support defendant's explanation, as well as defendant's "permissive response to harassing actions undertaken by coworkers and supervisors, combined with the absence of black supervisors and managers in the workplace"); *cf. Bergene v. Salt River Project Agr. Imp. and Power Dist.*,272 F.3d 1136, 1143 (9th Cir. 2001) (holding that absence of female supervisors was one piece of circumstantial evidence to be considered in considering pretext for failure to promote); *but see Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650 (1989*), superseded by statute on other grounds as recognized in Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1376 (8th Cir. 1992) (noting that statistical comparisons must address the "racial composition of the at-issue jobs and the racial composition of the qualified . . . population in the relevant labor market.").

Viewing the facts in the light most favorable to Burrell, the non-moving party, the Court finds that, based on the cumulative circumstantial evidence, a triable factual dispute exists as to whether Plaintiffs can demonstrate that Defendants' alleged non-discriminatory reasons for denying Burrell's promotion were pretextual.

**B.**     **Plaintiff Hayter's Disparate Treatment and Retaliation Claims under FEHA**

The Amended Complaint alleges retaliation against Plaintiff Hayter for filing a DFEH complaint, AC ¶ 81, and disparate treatment on the basis of Hayter's race, gender, and pregnancy, AC ¶ 95.

Unlike Burrell, Hayter filed two DFEH complaints.  Hayter's first DFEH complaint, filed on November 18, 2010, alleges only discrimination on the basis of race due to: (1) the denial of Hayter's December 2005 application for reallocation (Hayter's "December 2005 application"); (2) the denial of her January 2007 application for reclassification ("January 2007 application"); and (3)

33

**United States District Court**
For the Northern District of California

the denial of her December 2007 application for reallocation (Hayter's "December 2007 application"). MK Decl., Ex. H. The DFEH issued a right-to-sue notice on or about July 14, 2011. *See id.*

Hayter filed a second DFEH complaint on August 23, 2011. In this second complaint, Hayter checked the boxes for the following conduct: (1) denial of promotion; (2) retaliation; and (3) denial of pregnancy accommodation. Hayter further checked the following boxes as the bases for adverse employment actions: (1) sex;[17] (2) race/color; and (3) retaliation for engaging in protected activity or requesting a protected leave or accommodation. Hayter alleges that all of these acts of discrimination occurred "on about or before" April 21, 2010. *See* MK Decl. at Ex. H.[18] The DFEH issued a right-to-sue notice for this complaint on August 23, 2011. *Id.*

The Court first addresses Defendants' contentions that Hayter's claims are barred by FEHA's exhaustion requirement and statute of limitations. The Court then addresses Hayter's disparate treatment allegations, which appear to refer to Hayter's December 2005 reallocation application, her January 2007 reclassification application, and her December 2007 reallocation application.[19]

---

[17] FEHA prohibits employment discrimination on the basis of numerous classifications, including sex, gender, gender identity, and gender expression. *See* Cal. Gov't Code § 12940(a). Plaintiffs' Amended Complaint alleges disparate treatment on the basis of all three Plaintiffs' "gender – female." AC ¶¶ 92, 95, 98. However, the DFEH complaint forms only provide a box to check for "sex," and not for gender, gender identity, or gender expression. Because the parties do not distinguish between discrimination on the basis of gender as opposed to sex, the Court assumes for the purposes of this case that a DFEH complaint of discrimination on the basis of "sex" encompasses allegations of discrimination on the basis of "gender."

[18] Hayter's second DFEH complaint is particularly difficult to decipher. Nonetheless, the Court does its best to discern the allegations therein.

[19] In addition, Plaintiffs' Opposition references Hayter's January 2008 and February 2011 applications for a PHNM position. *See* Opp'n at 18. Hayter Decl. ¶¶17-18; Moresco Decl. ¶12. These applications were not referenced in the Amended Complaint or in either of Hayter's DFEH complaints, and are thus not properly before the Court. *See Coleman*, 232 F.3d at 1292 (complaint guides the parties discovery and puts defendant on notice of evidence needed for its defense); *see also Pickern*, 457 F.3d at 969 (holding that plaintiff cannot raise new factual allegations of which defendant had no prior notice at summary judgment).

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1.      **Defendants' FEHA Administrative Exhaustion and Statute of
        Limitations Challenges**

Defendants argue that FEHA's administrative exhaustion and time requirements bar several of Hayter's claims.  The Court finds that the statute of limitations bars Hayter's 2005 and 2007 claims and pregnancy accommodation claim, and that her only properly pleaded retaliation claim is not ripe for adjudication.

a.      **Statute of Limitations Bars Hayter's 2005 and 2007 Claims**

Like Burrell, Hayter alleges that she "was repeatedly passed over for promotion" over the course of several years, including in 2005 and 2007.  AC ¶ 95.  However, in order for the Court to have jurisdiction to review Hayter's claims, Hayter must have filed a DFEH complaint within one year of each alleged violation.  *See* Cal. Govt. Code § 12960(d).  As stated previously, Hayter filed her complaints in 2010 and 2011.  *See* MK Decl., Ex. H.  Despite the one-year bar, Hayter contends that her 2005 and 2007 claims are timely because of the continuing violation doctrine.

As noted above, if an adverse employment action is deemed permanent, the continuing violation doctrine does not apply.  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1057-59 (2005).  The Court finds a discrete application for reclassification or reallocation to be similar to an application for promotion, the denial of which carries a degree of permanency.  *See Maridon*, 2013 WL 1786592, at *13 (finding that a plaintiff's "failure to secure past promotions in a number of specific, discrete instances" was final as to each incident, even if the plaintiff was not convinced that the employer would never promote her in the future).  Here, Hayter's 2005 application for reallocation and her 2007 application for reclassification are each discrete processes which obtained a degree of permanence when Hayter was informed of the adverse decisions and did not pursue any grievance procedure.  *See Morgan*, 88 Cal. App. 4th at 67; *Maridon*, 2013 WL 1786592, at *9-11; *see supra* Part V.A.1.b.  Accordingly, the continuing violations doctrine does not apply to the denials of Hayter's December 2005 and January 2007 applications.

Consequently, the Court finds these claims time-barred, and GRANTS Defendants' Motion for Summary Judgment as to these claims.

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**b.      Statute of Limitations Bars Hayter's Pregnancy Accommodation Claim**

The Amended Complaint does not reference any claim for the absence of pregnancy accommodation.  However, the Amended Complaint's statement of facts alleges that, after Hayter's December 2005 reallocation application was denied in February of 2006, Hayter contacted Kathy Buchanan, Human Resources Analyst, about arbitrating the decision.  Buchanan allegedly asked if Hayter had just had a baby and was on maternity leave, and allegedly told Hayter, "this is probably not a good time for you."  AC ¶ 44.  When Hayter asked if there was anything else she could do about arbitrating, she was allegedly told there was not.  *Id*.  This same incident is referenced in Hayter's 2011 DFEH complaint, which "checks the box" for "denial of pregnancy accommodation."  MK Decl., Ex. H.  Thus, it appears that Hayter's alleged denial of pregnancy accommodation relates to the allegation that, in 2006, she was not allowed to participate in pre-arbitration because she was on maternity leave, and PHD was unwilling to engage in further arbitration after her maternity leave ended.  Based on this allegation, particularly in light of the fact that Hayter was explicitly told that there was nothing further that she could do to arbitrate, a reasonable employee would have believed that this decision was final.  Consequently, the Court finds that this alleged adverse employment action was sufficiently permanent, such that the continuing violations doctrine does not apply.  *See Yanowitz*, 36 Cal. 4th at 1057-59; *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 823 (2001).  As the event giving rise to Hayter's claim based on a denial of a pregnancy accommodation occurred in February of 2006, but Hayter did not file a DFEH complaint related to this event until August of 2011, the Court finds this claim to be time-barred.  Thus, the Court GRANTS Defendants' Motion for Summary Judgment as to this claim.

**c.      Hayter's Retaliation Claim is Not Ripe for Adjudication**

Defendants also challenge Hayter's retaliation claim as improperly exhausted.  *See* Reply at 9.  As stated above, all three Plaintiffs allege retaliation as their first cause of action.  AC ¶ 81.

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

However, the Amended Complaint does not reference any specific acts of retaliation against Hayter other than the "prospective pleading" of retaliation for filing DFEH complaints.  Because Hayter has not alleged any acts of retaliation for filing DFEH complaints and the Court does not find prospective pleading claims ripe for adjudication, the Court GRANTS Defendants' Motion for Summary Judgment as to this claim.[20]

### 2.     Plaintiff Hayter's Surviving Disparate Treatment Claim under FEHA

In contrast, Hayter's FEHA disparate treatment claim based on the denial of her December 2007 application for reallocation is not barred for lack of exhaustion of administrative remedies or timeliness, and is properly before the Court.  Defendants concede that Hayter's claim for the denial of her December 2007 application for reallocation was timely filed because Hayter filed a grievance pertaining to this denial on May 6, 2008, which the union pursued on her behalf until December 13, 2011.  *See* Hayter Dep. 84:1-10; Pineda Decl. ¶¶ 4-7.  Defendants acknowledge that pursuit of an administrative remedy tolls the statute of limitations.  *See* Mot. at 18 (citing *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 108 (2008)).  Moreover, both the adverse employment action and the alleged discriminatory cause of the alleged adverse employment action appear to be contained in the DFEH complaints.[21]

---

[20]  Hayter also seeks to raise additional claims of retaliation in Plaintiffs' Opposition.  Although the basis of these claims is not entirely clear, the Opposition alleges that Hayter was retaliated against after she advocated for more resources for the BIH program. *See* Opp'n at 27.  Hayter's Declaration states that the fact that she was paid for "seventy (70) hours [*sic*] for working out-of-class when [she] had been performing the same 'out of class' duties for four (4) years" was evidence of retaliation. *See* Hayter Decl. at ¶ 9.  However, because Plaintiffs' Amended Complaint does not provide any factual allegation of retaliation other than for filing the DFEH complaint, these claims are not properly before the Court. *See Coleman*, 232 F.3d at 1292 (complaint guides the parties discovery and puts defendant on notice of evidence needed for its defense); *see also Pickern*, 457 F.3d at 969 (holding that plaintiff cannot raise new factual allegations of which defendant had no prior notice at summary judgment).

[21]  Although the two DFEH complaints are not clear, the Court discerns that the 2007 failure to reclassify was allegedly caused by discrimination on the basis of both race and gender.  The allegation of racial discrimination was in both the 2010 and 2011 DFEH complaint, and the allegation of gender discrimination was included in the 2011 DFEH complaint.

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hayter appears to suggest two potential grounds for disparate treatment related to this December 2007 reallocation request.  First, Hayter points to the denial of the December 2007 reallocation request itself, followed by the elimination of four of Hayter's duties: (1) researching grants; (2) preparing grant applications; (3) preparing contracts; and (4) preparing budgets (Hayter's "additional duties").  *See* Cox Decl. ¶ 17.  Second, Hayter alleges that Defendants' decision to pay her 70 days for "working out of class" was an incident of disparate treatment.  The Court addresses each in turn.

a.      **Denial of Hayter's December 2007 Reallocation Request and Elimination of Some of Hayter's Additional Duties**

In December of 2007, Hayter applied for "reallocation" from PHN II to PHN III, a request which the County ultimately denied.  Hayter Dep. at 65:5-11.  In the course of evaluating Hayter's December 2007 application, however, Human Resources Analyst Kathy Buchanan initially recommended granting Hayter's application for reallocation, finding that Hayter was performing duties outside of the PHN II level.  Cox Decl. ¶ 16, Ex. O.  In making this assessment, Buchanan noted that the "[t]he PHN II is distinguished from the PHN III in that the PHN II 'normally carries a full case load' and the PHN III performs 'special assignments requiring more sophisticated health assessment and evaluation techniques and frequently acts in a consulting capacity.'"  Cox Decl., Ex. O.  Buchanan's report also noted that PHD administration did not believe that Hayter should be reclassified because she was performing PHN II level duties.  *Id.*  Upon reviewing Buchanan's report, Human Resources Director Joanne Cox determined that Hayter should not be reclassified, and that certain additional duties that Hayter was performing should be removed because they were outside the scope of PHN II duties.  Cox Decl. ¶ 17.  This determination was consistent with Defendants' contention that "[t]he program where Hayter worked as a PHN II (the BIH program) did not have, and did not require, nurses at the PNH III level."  Mot. at 21 (citing Hayter Dep. at

38

63:15-64:6; Burrell Dep. at 200:9-21; MK Decl, Ex. F, Dep. of Marty Fenstersheib ("Fenstersheib Dep.") at 58:5-18; 61:14-62:10).

Hayter argues that she was subjected to disparate treatment because Wedel and Alvarado removed Hayter's additional duties "in order to defeat Hayter's application for promotion." Opp'n at 7. According to Hayter, "[t]here did not appear to be any legitimate reason to refuse to allow Ms. Hayter to continue doing the 4 duties." Opp'n at 7. Hayter further alleges that, "[i]t was clear not [*sic*] one wanted Hayter's duties removed except Wedel who directed Alvarado to direct Burell to remove Hayter's duties." Opp'n at 7-8. Moreover, Hayter argues, "[i]t is clear Wedel and Alvarado are more interested in preventing [Hayter] from promoting [*sic*] than ensuring that the BIH program is properly staffed." Opp'n at 8.[22]

Defendants do not address whether Hayter has established a prima facie case for disparate treatment. However, unlike Defendants' failure to respond to Burrell's allegations, Defendants squarely address their non-discriminatory reasons for denying Hayter's reallocation application and removing her additional duties.

Defendants explain that, pursuant to ESA policy, if there is a dispute between the department and ESA about whether an employee is doing work authorized by his or her job code, an ESA Human Resources employee conducts an independent investigation to determine whether the duties are within the authorized job code's responsibilities. *See* Cox Decl. ¶ 17. In this case,

---

[22] Hayter also suggests that the removal of her additional duties was an act of retaliation for complaints about the "dismissive and de minimus view management expressed of the BIH Program." Opp'n at 7. As discussed above, Burrell's 2008 retaliation allegation is the only retaliation claim discussed in the Amended Complaint; other retaliation allegations are not properly before the Court. *See Coleman*, 232 F.3d at 1292 (complaint guides the parties discovery and puts defendant on notice of evidence needed for its defense); *see also Pickern*, 457 F.3d at 969 (holding that plaintiff cannot raise new factual allegations of which defendant had no prior notice at summary judgment). Moreover, Hayter has not identified further information about when she allegedly made complaints prior to the removal of her duties, to whom she complained, or any other information about the relationship between such unidentified complaints and the removal of her additional duties.

39

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Human Resources Director Joanne Cox conducted the investigation, taking Buchanan's report into consideration. *Id.* ¶¶ 16-17.  According to Defendants, Cox carried out her evaluation of Hayter's job duties and reached her ultimate conclusion to remove some of Hayter's job duties in a manner that was entirely consistent with ESA policy and the County's collective bargaining agreement with Hayter's union.  Cox determined that Hayter "may have been performing some duties that were not PHN II duties, and that the assignment of these duties was inconsistent with the ESA policy that employees should not work out of class unless there was a reason as outlined in the policy." *Id.* ¶ 17.  Cox explained that, "[b]ecause the assignment of the [*sic*] Ms. Hayter's job description was inconsistent with the ESA policy that would allow such a reclassification to be implemented, such duties were removed on April 9, 2008." *Id.*  According to Cox, "[m]y objective in removing these duties was to ensure that Ms. Hayter was properly classified and that she was performing primarily case management duties." *Id.*

Defendants further assert that the decision to remove some of Hayter's job duties rather than to reallocate her position was not motivated by discriminatory animus because, at the time Cox made the decision to remove Hayter's additional duties, she did not know Hayter's race.  Cox Decl. ¶ 17 ("At the time I made my decision to remove duties from Ms. Hayter I did not know her race and I did not make any effort to access information about her race.").

The Court finds that Defendants have satisfied their burden of showing legitimate, nondiscriminatory reasons for their employment actions.  *See Reid v. Google, Inc.,* 50 Cal. 4th 512, 520 n.2 (2010) (holding that a legitimate reason is one that is "facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination.") (internal citations omitted); *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355-56 (2000).  Consequently, Hayter must demonstrate either that Defendants' showing is insufficient or that there is a triable issue of fact material to the defendant's showing.  *See Lucent Techs., Inc.*, 642 F.3d at 746.  To do so, Hayter must "'produc[e]

40

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

substantial responsive evidence that the employer's showing was untrue or pretextual.'" *Id.*

(quoting *Hanson*, 74 Cal. App. 4th at 225).

The Court finds that Hayter has failed to produce either direct evidence or "specific" and

"substantial" circumstantial evidence to create a triable issue of pretext. *See Earl*, 658 F.3d at

1113; *see also Lucent Techs., Inc.,* 642 F.3d at 746 (holding that, to create a triable issue of pretext,

evidence cannot "simply show the employer's decision was wrong, mistaken or unwise," but must

"demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in

the employer's proffered legitimate reasons for its action that a reasonable factfinder could

rationally find them unworthy of credence . . . and hence infer that the employer did not act for the

. . . non-[discriminatory] reasons.").

As a preliminary matter, Hayter offers no specific or substantial evidence that Cox's

decision to remove Hayter's job responsibilities was either contrary to ESA policy or in any way

related to Hayter's race.  Indeed, Hayter offers no evidence at all to refute Cox's statement that

Cox did not know Hayter's race at the time Cox made the decision.  Hayter does allege that Cox

"should have known" Hayter's race because Hayter previously protested that her "numerous"

denials of promotion were "based on racial discrimination."  Hayter Decl. ¶ 6; Opp'n at 9.

However, Hayter does not specify to whom Hayter made these protests, when she made these

protests, whether any protests were made prior to Cox's decision, or why Cox should have known

about them.  As a result, Hayter has not rebutted Defendants' contention that Cox made the

employment decision based on criteria unrelated to racial bias.[23]  Moreover, contrary to Hayter's

assertion that "[t]here did not appear to be any legitimate reason to refuse to allow Ms. Hayter to

---

[23] Hayter also attempts to show that Cox's decision was pretextual by alleging that "Ms. Cox is not very familiar with the PHN III job description."  Hayter Decl. ¶ 7.  However, Hayter provides no support for this conclusory statement, nor any basis for knowledge.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that a "summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").

41

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

**United States District Court**
For the Northern District of California

continue doing the 4 duties," Opp'n at 7, the "reason" set forth by Cox was to ensure that Hayter's job duties were consistent with the ESA policy for the PHN II class, and the needs of the PHD. *Id.* ¶ 17. PHD administration determined that the program required a PHN II rather than a PHN III. *See* Fenstersheib Dep. at 61:14-62:10. While Hayter may think this reasoning is "wrong, mistaken, or unwise," Hayter has not demonstrated any basis for finding that Cox's explanation is unworthy of credence. *See Lucent Techs., Inc.*, 642 F.3d at 746.

In addition, Hayter offers no evidence to support her allegation that Wedel and Alvarado removed Hayter's duties in order to defeat Hayter's application for a promotion. Rather, the evidence indicates that these responsibilities were removed at the direction of Cox, the Human Resources Director. *See* Cox Decl. ¶¶ 16-18. Further, Hayter provides no support for her allegation that "it was clear not [*sic*] one wanted Hayter's duties removed except Wedel . . . ." Opp'n at 7-8. While Plaintiffs cite to paragraph 14 of Hayter's declaration to support this point, nothing in this paragraph provides evidence for this proposition. *See* Hayter Decl. ¶ 14 (making an unsupported allegation that "Cox has not been involved in this matter until her declaration in this case"). Indeed, Hayter's insistence that some ambiguity previously existed about the proper classification of Hayter's additional duties is precisely why Cox was consulted and asked to make an independent assessment of Hayter's job responsibilities, which she subsequently determined should be removed. Hayter has not provided any evidence that Wedel or Alvarado, rather than Cox, decided that Hayter's additional duties should be removed. *See* Cox Decl. ¶ 18 ("On April 10, 2008, Ms. Buchanan, pursuant to my direction, provided Ms. Hayter written notice that her position would not be reallocated  . . .").

Finally, Hayter sets forth no evidence to support her assertion that, "[i]t is *clear* Wedel and Alvarado are more interested in preventing Ms. Hayter from promoting than ensuring that the BIH program is properly staffed." Opp'n at 8 (emphasis added). As her best evidence of this

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

proposition, Plaintiff references an email exchange in which, when asked whether it would be possible to remove some of Hayter's duties, Wedel responded by saying, "absolutely." *See* Opp'n at 19.[24] Even if admissible, this exchange does not rise to the level of "substantial" evidence from which a reasonable fact finder could conclude that the basis for removing Hayter's duties was discriminatory intent.

The statement of facts in Plaintiffs' Opposition references two additional incidents which do not ultimately create a triable issue of pretext. First, Hayter alleges that, on April 21, 2008, Burrell's manager, Dolores Alvarado, pointed her finger in Hayter's face and said, "'don't you smirk at me' young lady." Hayter Decl. ¶ 12. Hayter adds that an SEIU Contracts Enforcement Specialist who was present told Alvarado that Hayter was merely smiling. *Id.* See *id.*; Opp'n at 9-10. However, Plaintiffs do not identify the relative age of Hayter or Alvarado, or the racial implications of the comment. In light of Plaintiffs' failure to elaborate on this statement, the Court declines to speculate as to its racial implications. *See United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991). Additionally, Hayter references Wedel's 2010 comment about the size of the African American community of Santa Clara County. *See* Hayter Decl. ¶ 11. However, Hayter does not provide evidence or analysis tying this comment to Cox's decision in 2008 to remove Hayter's duties. Without further explanation, these comments, at most, constitute evidence of the possibility of discrimination "in the air," rather than discrimination connected to employment decision making. *See Harris*, 56 Cal. 4th at 231; *Pottenger v. Potlatch Corp.,* 329 F.3d 740, 747

---

[24] Plaintiffs cite to "Alvarado Depo Ex 27." However, Exhibit 27 is not attached to the deposition of Dolores Alvarado. *See* Bonner Decl., Ex. 4. As addressed above, *supra* Part I, on April 16, 2013, nearly two weeks after the April 4 hearing, Plaintiffs' counsel submitted a supplemental declaration and exhibit, ECF No. 75, stating "During oral argument for the Motion for Summary Judgment, I noticed that Exhibit 43 of the Declaration of Vickye Hayter was incorrect. We are not sure if the incorrect document was included in the Court's copy of Ms. Hayter's declaration. We are supplementing the Court's copy in an abundance of caution." ECF No. 75, ¶ 3. The declaration attaches a page of the email exchange in which Wedel responds that Hayter's additional duties may "[a]bsolutely" be removed, which was indeed omitted from Hayter Decl., Ex. 43. *See* ECF No. 75, Ex. 1.

43

United States District Court
For the Northern District of California

(9th Cir. 2003) (finding isolated or ambivalent remarks insufficient to defeat an employer's summary judgment motion); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (finding the comment "we don't necessarily like grey hair" was "at best weak circumstantial evidence" of age discrimination).  Because Hayter has not identified evidence or factual disputes to tie these incidents to Cox's decision, these incidents are insufficient to rebut Defendants' proffered explanation.

In sum, the Court finds that, unlike Burrell, Hayter has failed to identify an insufficiency in Defendants' showing of a non-discriminatory reason, or evidence of a triable issue of fact with respect to that showing.  In reaching such a conclusion, the Court does not ask whether Defendants' decision was "mistaken or unwise," but rather must inquire whether Hayter has presented such "specific and substantial evidence" that a reasonable factfinder could find the proffered reasons "unworthy of credence" and infer that the employer did not act for the alleged non-discriminatory reason.  *See Lucent Techs., Inc.,* 642 F.3d at 746 (citing *Morgan,* 88 Cal.App.4th 52).  Based on Plaintiffs' presentation of the evidence, the Court finds that Hayter has failed to meet her burden, and this claim cannot survive Defendants' Motion for Summary Judgment.

### b.    Defendants' Decision to Pay Hayter 70 Days for "Working Out of Class"

Hayter also alleges disparate treatment based on Defendants' decision to pay her 70 days for working out of class.  Although Hayter's reimbursement for working out of class is referenced in the Amended Complaint, Hayter's disparate treatment cause of action only explicitly references her denial of a promotion.  *Compare* AC ¶ 46, *with* AC ¶ 95.  Even assuming that Hayter's reimbursement claim was sufficiently alleged in the Amended Complaint to put Defendants on notice of the allegation, the Court finds that Defendants have presented a legitimate reason for their decision, which Hayter has failed to rebut.

44

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants contend that, under the terms of the County's MOU with Hayter's union, SEIU, the County had the right to remove Hayter's duties within 20 working days after the receipt of her reallocation request.  Cox Decl. ¶ 18.  Because the County did not timely respond to the request within 20 days, Cox determined that Hayter should be paid for working out of class for 70 days, "the number of work days from when Ms. Hayter submitted her Position Classification Questionnaire to her supervisor to the date of the County's response on April 10, 2008." *Id.* Defendants contend that Hayter did not have a right to arbitrate because she was paid for working out of class.  *Id.*  At the time that Cox made this decision, she did not know Hayter's race.  *Id.*

Hayter does not dispute these facts.  Rather, she alleges that Wedel suggested paying a non-African American employee a year's salary for working out of class.  *See* Hayter Decl. ¶ 10 (citing Wedel Dep. Vol. III 457:4-461:1).  The statement of facts in Plaintiffs' Opposition specifically alleges that, on August 10, 2010, Wedel sent an email inquiring about paying a non-African American woman for a full year of working out of class. Opp'n at 9 (citing Hayter Decl. ¶ 18).

At Wedel's deposition, Wedel read from this email in which she inquired about paying a non-African American employee for a full year of working out of class.  The email stated that this employee had been on special assignment in the Public Health Preparedness department for about a year, in a job that had been determined to be a PHN II job.  Wedel Dep. Vol. III 457:16-20.  Wedel wrote, "However, during the past year, with increased level of involvement in the H1N1 response, I believe this PHN was functioning more as a PHN III."  Wedel Dep. Vol. III 457:20-23.  Wedel inquired:

> Is there a mechanism [*sic*] we can pay her a full year of retro pay to the higher level?  The nurse was formerly a 521 steward, and although she's been very gracious about helping, she's also mentioned to several people that she is doing PHN III work.

Wedel Dep. Vol. III 457:4-461:12.

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    This email does not sufficiently rebut the legitimate reasons that Defendants assert for the

2    decision to pay Hayter for only 70 days.  First, there is no evidence that this other employee

3    actually received any payment that differed from that which Hayter received, or any other evidence

4    of differential treatment.  In fact, Plaintiffs' counsel confirmed this lack of evidence at the May 2

5    pre-trial conference.  Second, there is no evidence tying Wedel's inquiry to Cox's decision to pay

6    Hayter for the 70 days between the time that Hayter submitted her request for reallocation and the

7    time that her duties were removed.  Consequently, this evidence is also insufficient to raise a triable

8    question of fact with respect to pretext.

9         Accordingly, the Court GRANTS Defendants Motion for Summary Judgment with respect

10   to Hayter's disparate treatment claim.

11        **C.        Plaintiff Headd's Disparate Treatment and Retaliation Claims under FEHA**

12        Plaintiff Headd alleges disparate treatment on the basis of race, gender, age, and medical

13   disability, AC ¶ 98, and retaliation for filing a DFEH complaint, AC ¶ 81.[25]  Although the factual

14   bases for this claim are not specifically identified, the allegation appears to arise out of Headd's

15   contention that, between 2009 and 2011, she was not hired, transferred, or promoted into certain

16   positions.  Opp'n at 10-12.

17        The instant suit followed two DFEH complaints.  Headd first filed a complaint with DFEH

18   on June 7, 2011, alleging that she was denied promotions in August of 2010, February of 2011, and

19   April of 2011, due to discrimination based on her race, age, and medical condition.  MK Decl., Ex.

---

[25]  It appears Headd may now also seek to pursue a disability accommodation claim.  *See* Headd
Decl. ¶¶5, 16; Opp'n at 10-11.  Under FEHA, Cal. Govt. Code Section 12940(m) requires
reasonable accommodation for disabilities, which gives rise to a separate cause of action from
FEHA's employment discrimination provision in Section 12940(a).  *See Diaz v. Fed. Express
Corp.*, 373 F. Supp. 2d 1034, 1054 (C.D. Cal. 2005) (citing *Bagatti v. Dep't of Rehabilitation,* 97
Cal. App. 4th 344, 362 (2002)) ("Subdivision (m) ... defines a separate and distinct unfair
employment practice independent of subdivision (a)").  Although the Amended Complaint
references discrimination on the basis of disability, it does not allege any cause of action or facts
supporting a disability accommodation claim, nor do either of Headd's DFEH complaints reference
disability accommodation.  Accordingly, Headd's disability accommodation claim is not properly
before the Court.  *See Coleman*, 232 F.3d at 1292 (complaint guides the parties discovery and puts
defendant on notice of evidence needed for its defense); *see also Pickern*, 457 F.3d at 969 (holding
that plaintiff cannot raise new factual allegations of which defendant had no prior notice at
summary judgment).

46

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

C, Dep. of Margaret Headd ("Headd Dep.") 348:6-349:21 & Ex. 4.  She filed an amended DFEH

complaint on June 28, 2011, discussing the same incidents and bases for discrimination, but adding

a claim of disability discrimination.  *See* Headd Dep. at 348:6-349:21 & Ex. 4.  The DFEH issued

right-to-sue notices on June 7, 2011, and August 29, 2011.  MK Decl., Ex. I.

Defendants contend that FEHA's statute of limitations bars Headd's disparate treatment

claims that are predicated on incidents that occurred over a year before her June 7, 2011 DFEH

complaint.  Mot. at 19.  Defendants further contend that Headd failed to exhaust her retaliation

claim.  Mot. at 26.  For Headd's remaining allegations, Defendants contend that Headd has not

rebutted Defendants' legitimate, non-discriminatory reasons.  The Court addresses each in turn.

### 1. Defendants' FEHA Administrative Exhaustion and Statute of Limitations Challenges

#### a. FEHA Statute of Limitations Bars Headd's Claims that Arose Over One Year Before Her June 7, 2011 DFEH Complaint

Despite the fact that Headd alleged only three adverse employment actions in her DFEH

complaint, Headd's Amended Complaint appears to base her federal claims on additional adverse

employment actions.  *See* AC ¶¶ 58-78.  Specifically, it appears from the Amended Complaint and

Plaintiffs' Opposition to Summary Judgment that Headd is also challenging: (1) her 2009 lay-off;

(2) her 2009 placements into two different Management Aide positions; and (3) the February 2010

denial of her application for a Health Program Specialist position.  *See* Mot. at 19-20; Opp'n at 13.

However, because Headd did not file her first DFEH complaint until June 7, 2011, these claims are

barred by FEHA's one year statute of limitations. *See* Cal. Govt. Code § 12960(d).

Like Burrell and Hayter, Headd relies on the continuing violations doctrine as an exception

to FEHA's statute of limitations.  Opp'n at 22.  As explained previously, the continuing violations

doctrine requires that: "(1) the actions are sufficiently similar in kind; (2) they occur with sufficient

frequency; and (3) they have not acquired a degree of 'permanence' so that employees are on

notice that further efforts at informal conciliation with the employer to obtain accommodation or

end harassment would be futile." *Richards*, 26 Cal. 4th at 823.  In this case, Headd's claims

acquired a degree of permanence over a year before she filed her complaint.  Specifically, Headd's

47

United States District Court
For the Northern District of California

2009 lay-off and 2009 placements in Management Aide positions became final at the time the employment actions occurred, even if the actions were not necessarily permanent in the sense that Headd could still be re-hired or transferred to another position in the future. *See Gardner v. City of Berkeley*, 838 F. Supp. 2d 910, 920 (N.D. Cal. 2012). If Headd believed she was wrongly laid off or improperly placed, she could have pursued these claims at the time. Similarly, Headd's February 2010 denial of her application for a Health Program Specialist position became permanent at the time of Headd's denial. *See Morgan*, 88 Cal. App. 4th at 67; *Maridon*, 2013 WL 1786592 at *9-11.

Because the Court finds that these new adverse employment actions acquired a degree of permanence over a year before Headd filed her first DFEH complaint, the continuing violations doctrine does not save these claims from FEHA's statute of limitations, and the Court GRANTS Defendants' Motion for Summary Judgment as to these claims.

### b.    Headd's Retaliation Claim is Not Ripe for Adjudication

Defendants also challenge Headd's retaliation claim as improperly exhausted. *See* Mot. at 26; Reply at 10. However, the Court need not reach the exhaustion issue, because the Amended Complaint does not allege any acts of retaliation against Headd. Rather, the only basis for Headd's retaliation claim is the Amended Complaint's allegation that Defendant County retaliated against Plaintiffs for filing DFEH complaints. AC ¶ 81. At the April 4 hearing, Plaintiffs' counsel conceded that the allegation of retaliation for filing DFEH complaints was not supported by any facts, but rather was "prospectively" pleaded in the event of future retaliation. Accordingly, the Court does not find this claim ripe for adjudication, and the Court GRANTS Defendants' Motion for Summary Judgment as to this claim.

### 2.    Plaintiff Headd's Surviving Disparate Treatment Claims Under FEHA

Defendants also move for summary judgment on the remainder of Headd's disparate treatment claims. As with Burrell and Hayter, the Amended Complaint does not clearly identify the factual basis of Headd's disparate treatment allegations, stating only that Headd was "repeatedly passed over for promotion," and required "to re-apply for each job and was not

48

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

promoted," "[e]ven though she was on a promotional list." AC ¶ 98.  Nevertheless, the adverse

employment actions on which Headd appears to rely for this claim include Headd's: (1) August

2010 application for a Health Program Specialist ("HPS") position with PHD Administration; (2)

November or December 2010 application for a Senior Health Care Program Analyst transfer

position for which she was not referred for an interview; (3) January 2011 application for a HPS

"promotional recruitment"; and (4) July 2011 application for a Health Planning Specialist II

transfer opportunity and a Health Care Program Analyst II transfer opportunity.  Headd alleges that

the discrimination she encountered relating to each incident "was motivated by [P]laintiff's race –

African-American, [P]laintiff's gender – female, [P]laintiff's age—over 40 and Plaintiff's medical

disability."  AC ¶ 98.

The County does not address Headd's prima facie case of disparate treatment.  Assuming

without deciding that Headd presents a prima facie case, the Court finds that the County has set

forth legitimate, non-discriminatory reasons for each employment action taken during the statutory

period.  Headd does not identify any specific evidence, let alone substantial evidence, that rebuts

Defendants' explanations.  Therefore, Headd fails to raise a triable question of fact regarding

whether Defendants' proffered explanations are pretextual.  Accordingly, the Court finds that, on

this record, a reasonable jury could not "conclude by a preponderance of the evidence that the

defendant undertook the challenged employment action because of [Headd's] race [or gender, age,

or medical disability]."  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1037 (9th Cir.

2006) (internal citation omitted).

### a.      August 2010 Application

In August of 2010, Headd applied for a HPS position with PHD Administration.  Headd

Dep. at 109:9-11; Moresco Decl. ¶ 16.  Defendants allege that they did not hire Headd for this

position because she: (1) lacked the requisite knowledge of Santa Clara County government

processes; (2) submitted application materials containing multiple spelling, grammatical, and

formatting errors; and (3) failed to submit a writing sample as requested.  Moresco Decl. ¶ 16.

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    Moreover, no candidate was ultimately hired for the position because the County deleted the

2    position. *Id.*

3          Headd fails to set forth significant and substantial evidence rebutting Defendants' rationale

4    for not promoting her to the HPS position in August of 2010.  First, Headd challenges the veracity

5    of Defendants' assertion that she lacked the requisite knowledge of Santa Clara government

6    processes.  Headd Decl. ¶ 8.  However, Headd provides no evidence beyond her assertion, made in

7    her declaration, that the "County's position is false and disputed" to demonstrate why the County's

8    position was wrong.  *See id.*  Second, Headd does not dispute that her application contained

9    multiple errors.  Third, while Headd disputes that she was instructed to submit a writing sample as

10   part of her application, she acknowledges that she was instructed to bring "a sample of [her] most

11   recent administrative (versus program planning) complex[,] high-level project you have managed."

12   *See* Headd Decl. ¶¶ 7-8; Moresco Decl. at ¶ 16.  Headd does not indicate that she complied with

13   the request for a project sample.  Most importantly, Headd does not dispute that the HPS position

14   was deleted, and in fact nobody was hired for the job.  Thus, even taking the disputed facts in the

15   light most favorable to the non-moving party, Headd fails to present a triable issue of pretext.

16                        **b.        November or December 2010 Application**

17          In November or December of 2010, Headd also applied for a Senior Health Care Program

18   Analyst transfer position but was not referred for an interview.  *See* Moresco Decl. ¶ 17 (stating

19   Hayter's application was submitted in November of 2010); Headd Decl. ¶ 12 (mistakenly quoting

20   Moresco Decl. as stating that the application was submitted in December of 2010).  Defendants

21   assert that Headd lacked the experience required under the County Employment Standards, which

22   required four years of professional level analytical and administrative experience, two of which

23   must have been in a health care setting.  Moresco Decl. ¶ 17 (reviewing records related to the

24   recruitment process).  In response, Headd alleges that she "did not lack sufficient experience as

25   [she] had been performing in a lead position role and coordinating programs since [she] became a

26   Santa Clara County employee."  Headd Decl. ¶ 12.  However, Headd does not provide any

27   evidence that she had "four years of professional level analytical and administrative experience," as

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

**United States District Court**
For the Northern District of California

1  required by the position.  She also fails to provide any indication of pretext.  Consequently, Headd

2  fails to present significant and substantial evidence rebutting Defendants' proffered reason for not

3  referring her for an interview for the SHCPA position.

4          **c.**      **January 2011 Application**

5        In January of 2011, Headd applied for an HPS "promotional recruitment."  Moresco Decl.

6  ¶ 18.  According to the County records, the hiring manager, Barbara Broderick, stated that Headd

7  was not selected because, among other reasons, Headd "'did not show breadth [of] knowledge and

8  skills' relevant to the program; had not worked on policy systems and environmental change

9  strategies; and had '[l]imited experience in management and team building.'"  *Id.* (quoting records

10  kept by the County); Broderick Decl. ¶¶ 4, 6.  Headd does not dispute these reasons or offer any

11  evidence that would indicate that her race, gender, age, or medical disability were actually

12  motivating reasons for the County's decision.  She simply states that, "Broderick was aware of my

13  skills and my eagerness to grow and develop new skills."  Headd Decl. ¶ 14.  Headd provides no

14  evidence that Broderick's stated reasons were pretextual.

15          **d.**      **July 2011 Application**

16        In July of 2011, Headd applied for a Health Planning Specialist II transfer opportunity and a

17  Health Care Program Analyst II transfer opportunity.  Moresco Decl. ¶ 19.  The Health Planning

18  Specialist II job was deleted before any interviews took place.

19        With respect to the Health Care Program Analyst II position, ESA informed Headd that

20  "she did not have the depth and scope of analytical and administrative experience required for the

21  classification."  *Id.*  Headd neither contests this, nor offers any significant or substantial evidence

22  that would indicate that the County's motivation for denying her application was based on her race,

23  gender, age, or medical disability.  Consequently, Headd provides no evidence that the reason she

24  was not granted the Health Planning Specialist II job was pretextual.

25          **e.**      **Comparable Positions**

26        Headd also contends that from October 2009 until 2012, PHD created 10 "comparable

27  positions" for which she alleges that she was qualified.  Opp'n at 12; Headd Decl. ¶ 6, 19.

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1    However, she does not offer any evidence demonstrating her qualifications for the positions,

2    whether the positions were vacant, or whether they were filled.  The Court does not find this

3    allegation indicative of disparate treatment.

### f.    Additional Allegations

5         Finally, Headd also sets forth additional allegations related to her time-barred claims.

6    Although Headd may include time-barred allegations for evidentiary purposes, Defendants have

7    provided specific explanations for each of their previous decisions, which Headd's unsupported

8    claims fail to rebut.  For example, Headd alleges that other employees, R.G. and C.V., were laid off

9    at the same time that she was in 2009, but were subsequently re-hired to higher level positions than

10   Headd.  Headd Decl. ¶ 4; Headd Dep. at 97:7-15; 98:5-9.  However, Defendants explain that both

11   R.G. and C.V. were assigned to these positions because, unlike Headd, they held underlying

12   permanent status in these positions.  *See* Cox Decl. ¶ 36.  Headd does not provide any evidence to

13   contest this.

14        In lieu of providing factual evidence of discrimination, Headd's declaration cites her own

15   deposition testimony, alleging that her deposition "reflects that I *did* feel I was discriminated

16   against based on my medical history, race and age."  Headd Decl. ¶ 10 (citing Headd Dep. at

17   262:10-263:8).  While it is undisputed that Headd felt discriminated against, she has not identified

18   sufficient facts to demonstrate that Defendants' explanations for their employment actions were

19   pretextual.  Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Headd's

20   remaining disparate treatment claims.

### D.    Disparate Impact (Sixth, Seventh, and Eighth Causes of Action)

22        Each of the three Plaintiffs also bring FEHA claims of disparate impact, alleging that the

23   County's policies had a disparate impact on African Americans.  AC ¶¶ 100-113.  A disparate

24   impact claim is a claim that "a facially neutral employer practice or policy, bearing no manifest

25   relationship to job requirements, . . . ha[s] a disproportionate adverse effect on members of the

26   protected class [regardless of motive]."  *Guz*, 24 Cal. 4th at 354 n.20 (citing *Griggs v. Duke Power

27   Co.*, 402 U.S. 424, 431 (1971)); *Raytheon Co. v. Hernandez*, 540 US. 44, 52-53 (2003).  To prevail

28

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

on a disparate impact claim, a plaintiff must identify a specific employment practice that is

challenged, and must then present statistical evidence showing that that practice has caused an

adverse impact on members of a protected class.  *See Carter v. CB Richard Ellis, Inc.*, 122 Cal.

App. 4th 1313, 1323-34 (2004).  "The proper comparison is between the racial composition of the

at-issue jobs and the racial composition of the qualified . . . population in the relevant labor

market."  *Wards Cove Packing Co., Inc.*, 490 U.S. at 650.

    Here, Plaintiffs neither identify a specific employment practice nor present competent

statistical evidence comparing the racial composition of the relevant market to the workers in the

jobs at issue.  Plaintiffs quote precedent that "[a]n employer's facially neutral practice of

committing employment decisions to the subjective discretion of supervisory employees [is] a

specific employment practice properly subject to a disparate impact analysis."  Opp'n at 29

(quoting *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990)).  Plaintiffs do not,

however, specify which of the County's employment practices involve this kind of delegated

discretion.  Plaintiffs also do not present any evidence of the kind of criteria the County uses in

establishing eligibility for the various positions at issue in this lawsuit.  In fact, Plaintiffs have

made no statement at all about the particular practice to which they object.

    Plaintiffs do refer vaguely to a failure to "take action to insure that Plaintiffs were not

stymied by the glass ceiling."  *Id.*  Plaintiffs cite, without explanation, portions of the testimony of

their expert Amy Oppenheimer regarding her untimely amended report.[26]  However, the Court

notes that the amended report did not contain any evidence of the type courts have held is required

for establishing disparate impact claims.  Even considering Oppenheimer's amended report and

testimony, Plaintiffs have failed to raise a genuine disputed issue of material fact.  Rather,

Oppenheimer's amended report merely suggests that Defendants could have been clearer in

delineating the promotion process and could have investigated more.  *See* Decl. of Charles Bonner,

ECF No. 52, Ex. 9, Dep. of Amy Oppenheimer ("Oppenheimer Dep.") at 100:9-101:11.  The cited

testimony does not, however, identify any particular employment practice to which Plaintiffs take

---

[26] As noted *supra* note 3, the Court has ruled to exclude Oppenheimer's untimely amended report,
and any testimony related to it.

Case No.: 11-CV-04569-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1    issue. *See id.* at 100:16-101:1 (stating that the County "did not provide guidance and mentoring, . .

2    . failed to make the procedures clear and, for lack of a better term, user friendly[, and]. . . failed to

3    consistently communicate and support [plaintiffs] in terms of their desires to be promoted.")  These

4    vague allegations concerning how the situation could have been better do not constitute

5    identification of a specific employment practice for disparate impact purposes.

6           Plaintiffs also fail to provide any statistical evidence of disparate impact, despite

7    recognizing the need for comparative statistics in order to prevail on a disparate impact claim.  *See*

8    Opp'n at 28 ("The first step in a statistical analysis is to identify the base population for

9    comparison.") (citing *Stout v. Potter*, 276 F.3d 1118, 1123 (9th Cir. 2002), and *Wards Cove*

10   *Packing*, 490 U.S. at 650-51).  Plaintiffs do not attempt to provide any statistical analysis.

11   Plaintiffs state only that, "[b]ased on the implicit bias test studies, there are few groups of

12   employees as impacted by the glass ceilings as much as African Americans. . . .  Further, the

13   Counties [*sic*] actions and inaction were inconsistent with a real commitment to diversity."  *Id.* at

14   29.  In so claiming, Plaintiffs cite to several passages from Oppenheimer's deposition.  Again, even

15   if admissible, Oppenheimer's testimony does not include any analysis of the racial makeup of

16   either the applicant pool or the current workforce.  *See* Oppenheimer Dep. at 101:12-15 ("Q: Have

17   you done any statistical analysis in this case?  A: No, they did not provide any statistics.  I would

18   like to see them.").  Oppenheimer's testimony concerning glass ceilings is general in nature, and

19   does not address the situation in the PHD.  *See, e.g.*, Oppenheimer Dep. at 99:20-100:1 ("Q: So

20   what is the underlying basis for your assertion that there are few groups of employees impacted by

21   glass ceilings as much as African Americans?"  A: Studies I've read, the implicit bias test I

22   mentioned earlier, statistics of African-Americans as opposed to women as partners in law firms, as

23   CEO's and, you know, different roles in our society.").  Testimony about the general challenges

24   faced by a minority group, without more, does not constitute evidence that any particular

25   employer's practices had a disparate impact on that group.

26           Plaintiffs also claim that, "[t]he declarations of African-Americans in the PHD creates [*sic*]

27   a disputed triable issue of fact as to whether County's promotions policies have a disparate impact

28

54

**United States District Court**
For the Northern District of California

on African-Americans." Opp'n at 29. These three declarations, which are from PHD employees Terry Pryor, Michael Bradford, and Mary Azah, state the approximate number of African Americans in the PHD, but do not identify "the racial composition of the qualified . . . population in the relevant labor market." *Wards Cove Packing*, 490 U.S. at 650-51.[27]

In sum, Plaintiffs have not presented any evidence that a specific employment practice in the County's PHD has a disparate impact on African Americans, both because they have failed to identify the specific employment practice at issue and because they have presented no evidence about the relevant labor market. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiffs' claims of disparate impact.

### E.  All Plaintiffs' Failure to Protect Claim under FEHA

In addition to prohibiting discrimination, FEHA also makes it illegal for "an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). "One such reasonable step, and one that is required in order to ensure a discrimination-free work environment, is a prompt investigation of [a] discrimination claim." *Cal. Fair Emp't & Housing Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1024 (2004) (citing *Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035 (2002)). "Other reasonable steps an employer might take include the establishment and promulgation of antidiscrimination policies and the implementation of effective procedures to handle complaints and grievances regarding discrimination." *Id.* at 1025. However, such a claim requires identification of actionable discrimination. The California Court of Appeal has explained that it does "not believe the statutory language supports recovery on such a private right of action where there has been a specific factual finding that no such discrimination or harassment actually occurred at the plaintiffs's [*sic*]

---

[27] Defendants have argued that these declarations are inadmissible because Plaintiffs did not list any of these three declarations in their Rule 26 initial disclosures. *See* Reply at 8. Because these declarations do not create a genuine issue of material fact as to the disparate impact of any specific policy, the Court need not reach the question of their admissibility for purposes of deciding the instant motion.

55

United States District Court
For the Northern District of California

workplace." *Trujillo v. N. County Transit Dist.*, 63 Cal. App. 4th 280, 288-89 (1998) (affirming trial court's grant of judgment as a matter of law for defendants where jury found that there had been a failure to protect but there had been no discrimination).

Defendants' only stated basis for objecting to Plaintiffs' claims of failure to prevent discrimination is the assertion that "there is no evidence that any employment action at issue was based on discrimination." Mot. at 25; Reply at 17. The Court agrees with respect to Plaintiffs Hayter and Headd, who have failed to allege actionable claims of discrimination, and therefore GRANTS Defendants' Motion for Summary Judgment with respect to these Plaintiffs.

However, because Plaintiff Burrell's disparate treatment claim has survived summary judgment, Defendants have failed to carry their initial burden of "identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact" with respect to this claim. *See Celotex Corp.*, 477 U.S. at 323. Plaintiff Burrell has alleged that she repeatedly raised concerns of discrimination to Alvarado and Peddycord, and that no investigation followed. *See* Burrell ¶¶ 6-9;[28] *Gemini Aluminum Corp.*, 122 Cal. App. 4th at 1024 (finding investigation of discrimination claims to be a "required"). Defendants have failed to introduce evidence that this fact is undisputed. Accordingly, the Court DENIES Defendants' Motion for Summary Judgment with respect to Plaintiff Burrell.

### F.    All Plaintiffs' 1983 Causes of Action

Defendants also move for summary judgment on Plaintiffs' two remaining claims under 42 U.S.C. § 1983: (1) retaliation for exercising free speech, and (2) negligent hiring, training, and supervision. The Court addresses each in turn.

---

[28] Defendants have objected to these conversations as hearsay. However, this testimony can be elicited without eliciting hearsay. Moreover, the Court does not rely on Burrell's testimony about conversations alleging discrimination for the truth of the matter asserted. *See* Fed. R. Evid. 802. Defendants also object on the basis of personal knowledge. Fed. R. Evid. 602. The Court interprets Burrell's statement regarding the absence of investigations as limited to the extent of her personal knowledge.

56

United States District Court
For the Northern District of California

1

**1.     Retaliation for Exercising Free Speech (Tenth Cause of Action)**

To state a claim under Section 1983, including a claim for retaliation based on the exercise of freedom of speech, Plaintiffs must prove: (1) "the violation of a right secured by the Constitution or laws of the United States"; and (2) "that the alleged deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, the Constitutional right at issue is the First Amendment right to freedom of speech.

The Ninth Circuit has established a five-part test to determine whether a public employee has been retaliated against for exercising free speech rights: "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (interpreting the "tangled history" of *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Plaintiffs allege in their Amended Complaint that "Defendant County took adverse employment action against Plaintiffs in violation of FEHA by retaliating against Plaintiffs for participating in statutorily protected activity and speech. Plaintiffs' complaints to the [DFEH] and [EEOC] were all protected activities. Defendant's adverse employment action against Plaintiffs as herein alleged was unprivileged, unlawful, and without business purpose." AC at ¶¶ 117-118.[29] Based on this Amended Complaint, Defendants were properly on notice that Plaintiffs were alleging retaliation for the filing of DFEH complaints. *See also* Mot. at 27 (moving for summary judgment on Plaintiffs' claims of first amendment retaliation for filing charges with the DFEH). However, no facts have been alleged to support these claims, as the alleged discriminatory actions all took place prior to the filing of the DFEH complaints.

---

[29] The parties clarified at the April 4 hearing that the same complaints were automatically filed with both the DFEH and the EEOC.

57

As discussed above, Plaintiffs' Opposition attempts to include entirely new claims of retaliation that were not raised in the Amended Complaint.  Specifically, Plaintiffs' Opposition alleges:

> As a concerned private citizens [*sic*], Burrell and Hayter advocated with speech for more resources for the BIH program, repeatedly explaining to my [*sic*] managers, Alvarado, Charis Subil, and Ira Schwartz, that we needed a PHN III to assist our efforts in effectively serving the African-American community . . . Burrell and Hayter also spoke out as private citizens about the discrimination in PHD. . . . Protesting discrimination in the PHD is protected speech . . . Here, the genuine material disputed facts is [*sic*] whether Defendants retaliated against Burrell and Hayter for their public speech against discrimination in PHD and for more resources for the BIH program.

Opp'n at 27.  *See* Burrell Decl. ¶¶ 34-39 (discussing her own and Hayter's requests for promotion); Hayter Decl. ¶¶ 4-24 (describing complaints limited to her own employment).

However, the Amended Complaint's First Amendment claim (Plaintiffs' tenth cause of action) only identified EEOC complaints as the protected activity and did not discuss advocacy on behalf of the BIH program. *See* AC at ¶¶ 117-118.  As explained above, such claims cannot be raised for the first time on summary judgment. *See Coleman*, 232 F.3d at 1292 (complaint guides the parties discovery and puts defendant on notice of evidence needed for its defense); *see also Pickern*, 457 F.3d at 969 (holding that plaintiff cannot raise new factual allegations of which defendant had no prior notice at summary judgment).  The prejudice to Defendants of raising such claims at summary judgment is evidenced in Defendants' summary judgment motion, which is premised on the assumption that "Plaintiffs claim that Defendants retaliated against them for filing charges with DFEH."  Mot. at 27 (citing AC ¶ 117).  Defendants were not sufficiently on notice regarding what speech Plaintiffs alleged took place in Plaintiffs' capacity as private citizens, nor which alleged employment actions were purportedly in retaliation for such speech.  Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiffs' tenth cause of action for First Amendment retaliation.

### 2.    Negligent Hiring, Training, and Supervision (Ninth Cause of Action)

Lastly, Defendants have moved for summary judgment on Plaintiffs' ninth cause of action, under 42 U.S.C. § 1983, for negligent hiring, training, supervision, and retention.  This claim

58

1   requires a showing that Plaintiffs' constitutional rights have been violated, and also requires a

2   showing that the negligent hiring, training, or supervision policies directly caused the plaintiff's

3   constitutional injury.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[A]

4   municipality can be found liable under § 1983 only where the municipality *itself* causes [a]

5   constitutional violation at issue.") (citing *Monell v. New York City Dep't. of Soc. Services,* 436 U.S.

6   658, 694-95 (1978)).  Plaintiffs failed to present any evidence or argument opposing summary

7   judgment on this claim.

8        Because the Court has granted summary judgment for Defendants on Plaintiffs' First

9   Amendment claim—Plaintiffs' only allegation of a constitutional violation—Plaintiffs cannot

10  establish the prerequisite constitutional violation to sustain a Section 1983 claim, much less that the

11  County's policies caused such a violation.  Accordingly, Defendants' Motion for Summary

12  Judgment on Plaintiffs' ninth cause of action is GRANTED.

**IV.      CONCLUSION**

14       For the reasons explained above, the Court DENIES Defendants' Motion for Summary

15  Judgment as to the third cause of action by Plaintiff Burrell, "Discrimination-Disparate Treatment,"

16  and as to Plaintiff Burrell's second cause of action, "Failure to Protect from Discrimination under

17  FEHA."  The Court GRANTS Defendants' Motion for Summary Judgment as to all remaining

18  causes of action.  Accordingly, Defendants Motion for Summary Judgment is GRANTED as to all

19  claims by Plaintiffs Hayter and Headd, and as to all claims again individual Defendants Dan

20  Peddycord, Rae Wedel, and Marty Fenstersheib.  Defendants' Motion to Sever is DENIED as

21  moot.

22  **IT IS SO ORDERED.**

23  Dated: May 17, 2013

                                    *Lucy H. Koh*

24                                    LUCY H. KOH
                                  United States District Judge